641 So.2d 1336 (1994)
Thomas Anthony WYATT, Appellant,
v.
STATE of Florida, Appellee.
No. 77666.
Supreme Court of Florida.
September 8, 1994.
Rehearing Denied November 3, 1994.
*1338 Richard L. Jorandby, Public Defender, and Gary Caldwell, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Celia A. Terenzio, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Thomas Wyatt appeals his conviction for first-degree murder and his sentence of death. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
Wyatt and Michael Lovette escaped from a prison work crew in North Carolina and fled to Florida. They stole a Cadillac in Jacksonville and proceeded to Vero Beach where they entered a Domino's Pizza restaurant armed with guns. Wyatt put two of the employees, Frances Edwards and Michael Bornoosh, in the bathroom. While Lovette stayed in front of the restaurant wearing Bornoosh's shirt, Wyatt made the other employee, William Edwards, who was Frances Edwards' husband, open the safe. After taking the money from the safe, Wyatt raped Frances Edwards and then shot all three employees to death.
Wyatt was convicted of three counts of first-degree murder, sexual battery, kidnapping, robbery with a firearm, grand theft, arson,[1] and possession of a firearm by a convicted felon. The jury recommended the death sentence for each of the three murders by a vote of twelve to zero. The trial judge followed this recommendation finding that the following aggravating factors existed: (1) the murders were committed while Wyatt was under a sentence of imprisonment; (2) Wyatt was previously convicted of a violent felony; (3) Wyatt was engaged in the commission of felonies when the murders were committed; (4) the murders were committed for the purpose of avoiding arrest; (5) the murders were committed for pecuniary gain; (6) the murders were especially heinous, atrocious, or cruel; (7) the murders were cold, calculated, and premeditated. § 921.141(5)(a), (b), (d), (e), (f), (h), (i), Fla. Stat. (1989). The court found no mitigating factors.
Wyatt's first argument on appeal is that several reversible errors occurred during the voir dire. After a careful review of the record, we find these claims to be without merit. In the course of reading to the jury the numerous charges against Wyatt, the trial judge erroneously referred to a charge of possession of a firearm by a convicted felon which had been severed from the case. When one of the state attorneys called this to the judge's attention, Wyatt's lawyer moved to strike the venire. The trial judge cured this inadvertent mention of Wyatt's prior conviction by instructing the jury that the count did not apply to Wyatt. Further, during the trial Wyatt testified that he was an eight-time convicted felon and was in possession of a firearm while in Florida. We hold that Wyatt was not unfairly prejudiced by the initial revelation. Therefore, any error is harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Wyatt's other claims pertaining to voir dire are without merit.
Wyatt also argues that evidence that he was an escaped convict was improperly *1339 admitted when a North Carolina prison escape investigator testified regarding samples of Wyatt's handwriting. Wyatt contends that because the State had Wyatt in its custody and had access to other handwriting samples, the investigator's testimony only served to prejudice Wyatt in the eyes of the jury. We reject this claim.
The State sought to use handwriting samples from prison files to compare with handwriting on hotel registration cards to prove that Wyatt and Lovette were in the area of the murders when they occurred. We do not believe that the State's decision to use samples which were written prior to, rather than in connection with, these proceedings was an unreasonable one. At the time the comparisons were being made, no other prior samples were available. When Wyatt refused to stipulate to the identity of the handwriting in the samples, the State called witnesses from the North Carolina corrections department to authenticate the samples and then introduced the samples into evidence.[2] We find no error in the testimony authenticating the samples.
Wyatt's next point on appeal is that the trial court erred in admitting certain evidence of other crimes or wrongful acts on the part of Wyatt. During the trial the State was allowed to present evidence that Wyatt: stole a car in Madeira Beach; told his former employer, Larry Bouchette, that he had killed three people and could kill again; stole Bouchette's truck; and when a stolen car in which he was a passenger was stopped by a police officer in South Carolina, Wyatt ran and when caught, put up a violent struggle. Wyatt argues that the acts in question are irrelevant to any fact in issue in the trial in the instant case.
The trial judge admitted the evidence of the two vehicle thefts and Wyatt's resistance of arrest as evidence of flight. We agree with the trial court that evidence of Wyatt's attempt to flee from the police officer was sufficient to support the conclusion that he was fleeing out of fear of apprehension for the murders. See Bundy v. State, 455 So.2d 330, 348 (Fla. 1984), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986). However, the fact that Wyatt stole two cars a week or more after the murders was not sufficiently probative of flight and should not have been admitted. Id. Nevertheless, because we believe that the admission of this evidence did not affect the outcome of the trial, we find it to be harmless beyond a reasonable doubt. DiGuilio, 491 So.2d at 1129.
Regarding Wyatt's statement to Bouchette, there was no objection made on this issue at trial. Therefore, this claim is precluded from appellate review. Stein v. State, 632 So.2d 1361, 1367 (Fla. 1994), petition for cert. filed, No. 93-9144 (U.S. May 16, 1994). In any event, the statement was admissible as an admission of a party as an exception to the hearsay rule. § 90.803(18), Fla. Stat. (1989); Swafford v. State, 533 So.2d 270 (Fla. 1988) (an admission made by a defendant is admissible if it is relevant, and an admission is relevant if it tends in some way to establish defendant's guilt), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989). Wyatt next argues that the trial court erred by admitting certain testimony made by Patrick McCoombs, a fellow inmate of Wyatt's.[3] At trial, McCoombs testified about the "convict code," and that he might be placed in a witness protection program because of his testimony. McCoombs also described Wyatt's demeanor while in jail. Wyatt contends that this testimony was improper character evidence and constitutes reversible error. We disagree.
First of all, there was no objection made to the statement about the "convict *1340 code." Therefore, this part of McCoombs' testimony cannot be reviewed on appeal. Stein, 632 So.2d at 1367. In any event, the reference to the code was not made to infer bad character on the part of Wyatt, but was made to show the unpopularity of convicts testifying against other convicts and the risks involved from the prison population in general. Next, the statement regarding the witness protection program was given when the prosecution was trying to elicit from McCoombs that he was going back to jail after he testified. Any error in this mention of the witness protection program is harmless beyond a reasonable doubt. See, e.g., Christmas v. State, 632 So.2d 1368, 1371 (Fla. 1994). Lastly, there was no error in McCoombs' description of Wyatt's demeanor. See Shiver v. State, 564 So.2d 1158 (Fla. 1st DCA 1990).
We reject without discussion Wyatt's remaining guilt-phase claims because they have no merit.[4]
Wyatt's remaining arguments pertain to the sentencing phase of the trial. He first asserts that the trial court erred in denying his motion for a continuance of the sentencing proceeding. Wyatt wanted the continuance in order to present mitigation from his mother and sister who were unavailable to testify at the time of the sentencing proceeding.[5]
The record shows that defense counsel had investigated and was prepared to present at least twelve witnesses in mitigation. In fact, subpoenas had been issued, only not delivered, for the witnesses who had been notified that they might be called to testify. However, Wyatt instructed his counsel throughout the trial that he did not want any witnesses called in mitigation. It was only the night before the penalty-phase proceedings began that Wyatt, knowing of their unavailability, instructed his counsel that he wanted his mother and sister to testify on his behalf. Although the State offered to allow the witnesses to appear by video tape or submit testimony via depositions or affidavits, Wyatt refused the offer. In sum, the record is clear that Wyatt effectively waived presentation of mitigating evidence. Therefore, the trial court did not abuse its discretion by refusing to suspend the penalty proceedings indefinitely.
Wyatt also contends that evidence regarding thefts committed during his escape from prison was improperly admitted. During the penalty phase, a North Carolina prison official testified that after walking away from a prison road crew, Wyatt and Lovette stole a canoe and a car to get out of North Carolina. We agree with Wyatt that this evidence was not relevant to an aggravating circumstance and should not have been admitted. However, in view of his other crimes, the admission of this evidence was clearly harmless error. Mordenti v. State, 630 So.2d 1080, 1085 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 2726, 129 L.Ed.2d 849 (1994).
Next, Wyatt argues that the trial court erred in finding the murders to have been especially heinous, atrocious, or cruel. We cannot agree. The evidence shows that the victims were subjected to at least twenty minutes of abuse prior to their deaths. Wyatt pistol-whipped William Edwards when the safe did not contain enough money for his satisfaction. Wyatt also undressed Frances Edwards completely and raped her a short distance from where the other two employees were being held. Wyatt then killed his victims in front of each other. William *1341 Edwards begged for his life and stated that he and Frances, his wife, had a two-year-old daughter at home. Wyatt shot him in the chest. Upon seeing her husband shot, Frances Edwards began to cry and Wyatt then shot her in the head while she was in a kneeling position. Having witnessed the shooting of his co-workers, Michael Bornoosh started to pray. Wyatt put his gun to Bornoosh's ear and before he pulled the trigger told him to listen real close to hear the bullet coming. When Wyatt realized William Edwards was still alive he went back and shot him in the head.
The evidence is sufficient to show that Mr. and Mrs. Edwards and Bornoosh were acutely aware of their impending deaths. This Court has repeatedly upheld the heinous, atrocious, or cruel aggravating factor in circumstances where the victim suffers such mental anguish. Douglas v. State, 575 So.2d 165 (Fla. 1991); Bruno v. State, 574 So.2d 76 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 112, 116 L.Ed.2d 81 (1991); Swafford. There is competent and substantial evidence in the record to support the trial court's finding of this aggravating factor.
Wyatt also claims that the trial court erred in finding the murder to have been committed in a cold, calculated, and premeditated manner. On this point, we tend to agree. Proof of the cold, calculated, and premeditated aggravating factor requires evidence of calculation prior to the murder, i.e., a careful plan or prearranged design to kill. Valdes v. State, 626 So.2d 1316 (Fla. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2725, 129 L.Ed.2d 849 (1994); Sweet v. State, 624 So.2d 1138 (Fla. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1206, 127 L.Ed.2d 553 (1994); Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). The evidence in the record is insufficient to sustain the level of premeditation required for the finding of this circumstance.
Wyatt further argues that the heinous, atrocious, or cruel and the cold, calculated, and premeditated aggravating factors are unconstitutional. This claim has no merit. Wyatt's argument that the jury instructions pertaining to these circumstances are unconstitutional also fails. As no objection was made to these instructions, the claims are not preserved for appeal. Ferguson v. Singletary, 632 So.2d 53 (Fla. 1993).
We reject without comment the remaining penalty-phase issues raised by Wyatt.[6] With the elimination of the aggravating circumstance that the murders were cold, calculated, and premeditated, there remain six aggravating circumstances and no mitigation. On this record, we conclude that the elimination of this aggravator was harmless beyond a reasonable doubt. Further, the death penalty in this case is clearly proportionate. Accordingly, we affirm all of Wyatt's convictions and his sentence of death.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] The stolen Cadillac, seen at Domino's at the time of the murders, was later burned by Wyatt and Lovette in Indian River County.
[2] The State offered to stipulate to the identity of both Wyatt's and Lovette's handwriting in the samples. Had there been such a stipulation, the samples would not have been introduced into evidence, the witnesses would not have been called to authenticate the samples, and the jury would not have known the source of the samples. However, Wyatt only agreed to stipulate to his handwriting and not that of Lovette. The State refused Wyatt's proposed stipulation because this could have implied that Lovette had previously been in prison but Wyatt had not.
[3] After leaving Florida, Wyatt was arrested in South Carolina on an unrelated charge. While in jail there, he met and talked at length with McCoombs, another inmate.
[4] Wyatt also argues that: (1) the search warrant to obtain blood and hair samples was illegal; (2) during custodial interrogation his Miranda rights were violated; (3) statistical testimony regarding DNA evidence was improperly admitted; (4) his being shackled in the court room and in the judge's chambers was prejudicial to him; (5) the trial court erroneously refused to allow a proffer of testimony regarding the admissibility of his fingerprints; (6) the medical examiner gave improper speculative testimony; (7) the jury was improperly instructed regarding flight, premeditation, and reasonable doubt; and (8) the prosecution's guilt-phase closing argument was improper.
[5] Wyatt's mother suffered from a mental disorder and was rendered incompetent to testify. At the time of the penalty proceeding, her condition was worsening and there was no prognosis as to when, or if, she would ever be able to testify. Wyatt's sister had pregnancy complications and she could not travel to testify for five months.
[6] Wyatt also argues that (1) the trial court did not consider his mitigating statement expressing sympathy for the families of the victims; (2) evidence and photographs relating to prior violent felonies were improperly admitted; (3) hearsay evidence regarding statements made by a previous robbery victim violated the confrontation clause; (4) the prosecution's penalty-phase closing argument was improper; and (5) the death penalty is unconstitutional.