699 So.2d 988 (1997)
Douglas Martin ESCOBAR, Appellant,
v.
STATE of Florida, Appellee.
No. 77736.
Supreme Court of Florida.
July 10, 1997.
Rehearing Denied October 2, 1997.
*990 Ronald S. Lowy, Special Assistant Public Defender, of the Law Offices of Ronald S. Lowy, Miami Beach, for appellant.
Robert A. Butterworth, Attorney General and Fariba N. Komeily, Assistant Attorney General, Miami, for Appellee.
PER CURIAM.
Douglas Escobar appeals his conviction for first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We find reversible error in the trial court's granting of the State's motion for *991 rejoinder of codefendants. Accordingly, we reverse the convictions and sentences for first-degree murder and for possession of a firearm during the commission of a felony. We remand for proceedings consistent with this opinion to begin within 180 days of the filing of this opinion.
Appellant and his brother, Dennis Escobar, were convicted of first-degree premeditated murder, possession of a firearm during the commission of a felony, and grand theft of an automobile. Through a combination of the brothers' confessions, testimony from Dennis Escobar's wife, testimony from a friend, and physical evidence, the following facts were presented to the jury. During a day-long drinking binge on March 30, 1988, the Escobar brothers were traveling in a gray Mazda they had stolen a few days earlier from a Miami car dealer. Douglas was driving and Dennis was a passenger when the brothers saw a police car following them. Douglas tried to evade the officer by pulling into a residential yard. The police car stopped behind them. Douglas said to Dennis, "If he gets out, shoot him." The officer, Victor Estefan, exited his car with his gun drawn and shouted for the brothers to exit their car. As Estefan approached, Dennis got out, fired three or four shots at Estefan with a .357 magnum handgun, and returned to the Mazda. Douglas backed the Mazda into Estefan's patrol car before driving off. The brothers had the Mazda washed to eliminate fingerprints, abandoned the car, and threw the gun into a canal. Police recovered the stolen car and found physical evidence indicating that the car had hit Estefan's patrol car. A fingerprint from Douglas was found on the stolen Mazda.
There were no eyewitnesses or suspects the night of the shooting. Just before he died of gunshot wounds, Estefan described his assailant as a white male passenger in a gray Mazda, which Estefan had stopped because it was traveling without lights. A month later, Miami police received information from California police implicating the Escobar brothers in the Estefan shooting. Two Miami police detectives traveled to California to meet with Dennis and Douglas Escobar, who were in custody in a California medical facility where they were recovering from wounds received in a shoot-out with California Highway Patrol officers.[1] The Escobars individually confessed to participating in the murder of Estefan in Miami.
Prior to trial, appellant and his codefendant each filed motions for severance of their trials. Originally, the trial court allowed separate trials. However, the court subsequently granted the State's motion for rejoinder based upon a 1990 amendment to the Florida Evidence Code.[2] The court then denied motions for severance during both the guilt and penalty-phase proceedings. The brothers were tried jointly. Neither defendant testified during the guilt or penalty phases of the joint trial. The jury found appellant guilty of all charges and, by a vote of eleven to one, recommended the death penalty. The trial court followed the recommendation, finding two aggravating factors: (1) previous conviction of a violent felony;[3] and (2) the victim was a law enforcement officer engaged in the lawful performance of official duties.[4] The court found one nonstatutory mitigating factor: appellant came from a broken home. The trial court sentenced appellant to death.
Appellant raises seventeen issues in this direct appeal.[5] In reversing appellant's convictions *992 and sentence, we need address only issue seven, in which appellant argues that the trial court erred in granting the State's motion for rejoinder of his trial with that of his codefendant and the admitting into evidence of incriminating portions of the codefendant's out-of-court statement. However, for purposes of the new trial, we address issues one, three, four, and five. We find issues two, six, and eight through seventeen to be moot in light of our decisions on these other issues.
As to our reason for reversal, we agree with appellant's contention that the trial court erred by granting the State's motion for rejoinder of the two defendants by denying appellant's repeated motions to have his trial severed from that of his codefendant and then by admitting into evidence at the joint trial the codefendant's statement, which incriminated appellant. Appellant argues specifically that the trial court's failure to grant a severance violated his federal constitutional right to confront his codefendant, who did not testify at their joint trial, as to those portions of the codefendant's confession admitted at trial that incriminated appellant in the shooting death of Estefan. Our agreement with this contention compels us to reverse appellant's conviction and sentence and to remand for a new trial.
In Franqui v. State, 699 So.2d 1312 (Fla. 1997), we extensively reviewed the use of interlocking confessions of codefendants in joint trials. For the reasons stated in our opinion in Franqui, we reject the State's contention that the 1990 amendment to the Florida Evidence Code was a proper basis upon which to admit appellant's codefendant's confession incriminating appellant in this joint trial, and we determine that the admission of those portions of Dennis Escobar's statement was error.
As we further decided in Franqui, this error is subject to a harmless error review. This case differs from Franqui in that there was no charge of felony murder here. The jury was instructed only as to premeditated first-degree murder. Within Dennis Escobar's statement that the trial court allowed into evidence is information which incriminated appellant, including Dennis's assertion that appellant told Dennis to shoot Estefan. The State extensively used Dennis's statement against appellant in support of the State's argument that appellant was guilty of premeditated murder. From our review of the record, we cannot find the error to be harmless in this case.
For the new trial, the trial court is to again consider whether appellant and Dennis Escobar can be tried jointly. The trial court is to apply in this decision Florida Rule of Criminal Procedure 3.152(b)(2)[6] if the State *993 intends to offer Dennis Escobar's statement against appellant in a joint trial. In the new trial, whether it is a joint trial or a separate trial for appellant, only those statements in the confession of Dennis Escobar which are admissible in compliance with our opinion in Franqui are to be admitted in the new trial.
We now move to appellant's issue number one. We reject appellant's claim that the trial court erred in failing to suppress appellant's confession because it was involuntary. The trial court held an evidentiary hearing and then denied appellant's motion to suppress statements that appellant made to law-enforcement officers on April 30, 1988, May 3, 1988, and May 28, 1988.[7] Only the April 30, 1988 statements by appellant were offered into evidence by the State and admitted by the trial court.
Appellant argues that the trial court erred in denying appellant's motion to suppress and admitting appellant's statements of April 30 into evidence because his medical condition, which required his being administered morphine, prevented his waiver of rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), from being knowing, intelligent, and voluntary. These statements were given while appellant was hospitalized in Templeton, California, for wounds received in the shoot-out with California Highway Patrol officers.
The trial court held an extensive evidentiary hearing on appellant's motion to suppress. At the hearing, the defendant presented testimony of a nontreating psychiatrist and one of appellant's treating physicians. The psychiatrist testified based upon her review of the hospital records. These physicians opined that in view of the dosage of morphine given to appellant, appellant could not have knowingly, intelligently, and voluntarily waived his Miranda rights. In rebuttal, the State pointed to the hospital records for April 30 and contended that hospital records indicated that appellant's vital signs were stable and that appellant was alert and active. In answer to the trial court's question, the treating physician acknowledged that if appellant had been irrational or unresponsive during his visits, he would have so noted in his physician's notes which form part of the hospital records. There were no such notations. The State also presented a treating nurse who attended appellant for three days prior to and including April 30, 1988. She testified that appellant was awake and oriented as to time, place, and circumstances. The nurse testified that appellant had a very high tolerance for morphine.
At the conclusion of the evidentiary suppression hearing, the trial court noted that the psychiatrist had never personally attended appellant. The court further noted that the treating physician had not recorded anything about appellant being irrational on April 30. Based upon the testimony and the hospital records, the court found the nurse to have been the more credible of the witnesses. The court also found that appellant's Miranda waiver was knowing, intelligent, and voluntary.
A trial court's ruling on a motion to suppress is presumptively correct. Medina *994 v. State, 466 So.2d 1046, 1049 (Fla.1985). When evidence adequately supports two conflicting theories, our duty is to review the record in the light most favorable to the prevailing theory. Johnson v. State, 660 So.2d 637, 642 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1550, 134 L.Ed.2d 653 (1996). The fact that the evidence is conflicting does not in itself show that the State failed to meet its burden of showing by a preponderance of the evidence that the confession was freely and voluntarily given and that the rights of the accused were knowingly and intelligently waived. Id.; Thompson v. State, 548 So.2d 198, 204 (Fla.1989). Based upon our review of the record of the suppression hearing, we conclude that the trial court's decision was based on competent, substantial evidence. Accordingly, we affirm the trial court's denial of the motion to suppress the confession on the grounds of involuntariness related to the appellant's medical condition.
Appellant also contends that the second statement appellant made to police on April 30 was not immediately preceded by Miranda warnings. This statement was made approximately six hours after the first statement. There is no requirement of additional warnings during the same period of interrogation if it is clear that detainees are aware of their rights. Johnson, 660 So.2d at 642. The record reflects that appellant received proper Miranda warnings before the overall interrogation began and that appellant was aware of his rights when he made all of his statements. Accordingly, we find no error related to the timing of appellant's Miranda warnings.
Finally, appellant argues that his confession should have been suppressed because police detectives deluded him before he gave his statements by falsely stating that they had obtained physical evidence and by failing to inform him that he could be sentenced to death. However, appellant did not raise this argument in his motion to suppress or in the suppression hearing. Therefore, it is procedurally barred. Tillman v. State, 471 So.2d 32, 34-35 (Fla.1985). Even if it were not procedurally barred, we would reject appellant's contention. Police misrepresentation alone does not necessarily render a confession involuntary. Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Burch v. State, 343 So.2d 831 (Fla. 1977); Grant v. State, 171 So.2d 361 (Fla. 1965). The determination of voluntariness is based upon the totality of the circumstances, with the determination to be made by the judge based on a multiplicity of factors. Traylor v. State, 596 So.2d 957, 964 (Fla. 1992). In this case, we find no abuse of the trial court's discretion in finding from the totality of the circumstances that the confession was voluntary.
We conclude that appellant's confession was not legally the result of coercion, deception, or the violation of constitutional rights. Accordingly, we find no error in the trial court's ruling that appellant's statements were freely and voluntarily given to police after appellant knowingly and intelligently waived his Miranda rights.
As to issue three, the trial court first considered the issue of the admissibility of evidence concerning the California shoot-out when the State filed a notice of intent to rely upon Williams rule evidence.[8] This evidence consisted of: (1) a statement appellant made to his neighbor, Angel Bonilla, prior to the Estefan murder; (2) testimony indicating that appellant and his codefendant fled from and engaged in a shoot-out with California Highway Patrol officers one month after the Estefan shooting; and (3) testimony concerning two California arrest warrants (for robbery and unlawful flight to avoid prosecution) against appellant which were outstanding at the time of the Estefan shooting. The trial *995 court ordered that the evidence could not be admitted. The State petitioned for certiorari review of this order to the Third District Court of Appeal. The district court granted certiorari and quashed the trial court's order. State v. Escobar, 570 So.2d 1343, 1346 (Fla. 3d DCA 1990). Based upon a de novo review of the issues decided by the district court, we agree with the district court rulings as they were applied in the trial in respect to the evidence of the statement made to the neighbor and the testimony concerning the California arrest warrants. We do not agree with the trial court's application in the trial of the district court's ruling regarding the California shoot-out as evidence of consciousness of guilt or identity.
The district court ruled in respect to the California shooting incident:
Turning to the issues raised by the State in its petition for certiorari, we conclude that the trial court departed from the essential requirements of the law in excluding evidence that one month after the murder of Officer Estefan the defendants fled from and engaged in a shoot-out with California Highway Patrolmen who were attempting to apprehend the Escobars for a traffic violation. When suspected persons in any manner attempt "to escape or evade a threatened prosecution by flight, concealment, resistance to lawful arrest, or other indications after the fact of a desire to evade prosecution, such fact is admissible, being relevant to the consciousness of guilt which may be inferred from such circumstances." Straight v. State, 397 So.2d 903, 908 (Fla.) (citations omitted), cert. denied, Straight v. Florida, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). See Perez v. State, 539 So.2d 600 (Fla. 3d DCA 1989) (evidence that defendant fled when police attempted to apprehend him admissible). Here, the Escobars were willing to use deadly force to try to avoid arrest. This evidence is probative of defendant's mental state and is, therefore, admissible. Straight, 397 So.2d at 908.
570 So.2d at 1345.
We agree, as an abstract rule of law, that evidence of flight, concealment, or resistance to lawful arrest after the fact of a crime is admissible as "being relevant to consciousness of guilt which may be inferred from such circumstances." Straight v. State, 397 So.2d at 903, 908 (Fla.1981). However, in applying this principle to a particular case, there must be evidence which indicates a nexus between the flight, concealment, or resistance to lawful arrest and the crime(s) for which the defendant is being tried in that specific case. This is necessary in the application of this rule of law since the evidence creates an inference of a consciousness of guilt of the crime for which the defendant is being tried in that case. See Merritt v. State, 523 So.2d 573, 574 (Fla.1988). The ultimate admissibility issue is the relevance to the charged crime.
In Bundy v. State, 471 So.2d 9 (Fla. 1985), we specifically pointed to the fact that Bundy had fled from a law enforcement officer two days after the victim's murder and that evidence of Bundy's flight from police six days after the victim's murder included a showing that the victim's disappearance had generated widespread publicity in areas where Bundy and law enforcement officers were during the time between the murder and Bundy's arrest resistance. Id. at 21. In Bundy, we cited United States v. Borders, 693 F.2d 1318 (11th Cir.1982):
In Borders, the court noted that the cases in which flight evidence has been held inadmissible have contained particular facts which tend to detract from the probative value of such evidence. For instance, the probative value of flight evidence is weakened: 1) if the suspect was unaware at the time of the flight that he was the subject of a criminal investigation for the particular crime charged, United States v. Beahm, 664 F.2d 414, 419-20 (4th Cir. 1981); 2) where there were not clear indications that the defendant had in fact fled, Myers, 550 F.2d at 1049-50; or, 3) where there was a significant time delay from the commission of the crime to the time of flight. See, e.g., United States v. Howze, 668 F.2d 322, 324-25 (7th Cir.1982); [United States v.] Myers[, 550 F.2d 1036 (5th Cir.1977)]; United States v. White, 488 F.2d 660, 663 (8th Cir.1973). The interpretation to be gleaned from an act of *996 flight should be made with a sensitivity to the facts of the particular case. Borders, 693 F.2d at 1325.
471 So.2d at 21. This last statement in Borders that "[t]he interpretation to be gleaned from an act of flight should be made with a sensitivity to the facts of the particular case," 693 F.2d at 1325, is of particular import in the application of the rule of law.
In Merritt, we respected this statement from Borders when we distinguished the admission of flight evidence in Bundy on the basis of the facts of Merritt, pointing out that in Bundy the flight occurred only a few days after the victim's much publicized disappearance. 523 So.2d at 574. We reversed Merritt's conviction and sentence and remanded for a new trial because of the admission of evidence of Merritt's escape nine months after Merritt became aware of the investigation of the murder for which he was being tried. Id. We found that because of the time period of nine months and because the escape occurred during Merritt's being transported from Virginia to Florida for trial on unrelated charges there was insufficient evidence for the jury to reasonably infer that Merritt escaped to avoid prosecution for the murder for which Merritt was being tried. Id.
Similarly, we do not find a sufficient evidentiary nexus in the record of this trial to have permitted the jury in this case to reasonably infer that appellant's acts in resisting arrest in California were related to the Estefan murder. Two of the three Borders examples of situations which weaken the probative value of this type of evidence are present in this case. Not only was the California shooting twenty-seven days after the Estefan murder, but there was no evidence in the record that appellant had any reason to believe, at the time he resisted arrest in California, that he was the subject of the investigation of the Estefan murder or that he was a suspect in the Estefan murder in either Florida or California. There was no evidence that the Estefan murder had received any publicity in California. To the contrary, the evidence was that it was following the shooting incident which terminated with appellant being shot and arrested while appellant was in California law-enforcement custody that California police learned information about the Estefan murder. California law enforcement officers conveyed this information to law enforcement officers in Miami, and appellant only then became a suspect in the Estefan murder.
Furthermore, the record reveals that police had outstanding warrants against appellant in California for California crimes. We conclude that the existence of the outstanding warrants is significant. It could be reasonably inferred that the California warrants alone were the cause of appellant's attempt to flee the California police. This issue differs from the one in Freeman v. State, 547 So.2d 125 (Fla.1989), in which Freeman contended that evidence of flight was irrelevant to the charge for which he was being tried because at the time of his escape attempt he was charged with another crime which might have resulted in a more serious penalty. Id. at 128. The difference between Freeman and this case is that Freeman was incarcerated for both offenses and it could reasonably be inferred that he attempted to avoid penalties for both. Id.
The State also contends that this case is similar to Straight and Wyatt v. State, 641 So.2d 1336 (Fla.1994), in which we found no error in the admission of portions of evidence concerning resistance to lawful arrest as relevant to consciousness of guilt. We find the circumstances in both Straight and Wyatt to be distinguishable from the facts of this case. Our opinion in Straight does not state the time period which lapsed between the Florida murder for which Straight was being tried and Straight's resistance of arrest in California by firing at California officers. 397 So.2d at 905. However, in Straight there was a sufficient nexus between Straight's California resistance to arrest and the Florida murder for the jury to infer consciousness of guilt of the Florida murder. Also, there was no evidence that Straight had any outstanding California warrants for which he would have resisted arrest in California. Likewise, we distinguish Wyatt, in which we approved the admission of a portion of the evidence concerning Wyatt's resisting arrest. 641 So.2d at 1339. In Wyatt, we found that there was *997 sufficient evidence to support the conclusion that Wyatt was fleeing prosecution for the murders for which he was being tried. Id. The facts which we have detailed in this opinion make this case factually distinct from Wyatt. It should be noted that in Wyatt we did find error in the admission of evidence that Wyatt stole two cars a week or more after the murders because that evidence was not sufficiently probative of flight. Id.
Based upon the totality of the present evidence, to infer that appellant resisted arrest in California because appellant was conscious of his guilt of the Estefan murder is simply not a reasonable inference. Thus, we conclude on the basis of the trial record that the evidence concerning the California shooting was not admissible to show consciousness of guilt because there was insufficient nexus evidence to make it relevant.
The Third District also held that there was another basis for the admission of this evidence against appellant:
Evidence of the California shoot-out was also relevant to establish Douglas's involvement in the Estefan murder in view of his asserted defense that Dennis was the primary perpetrator and triggerman in the killing. See Remeta v. State, 522 So.2d 825 (Fla.) (testimony regarding robberies and murders committed by defendant in Texas admissible to refute defendant's statements blaming accomplice for similar crimes committed in Florida), cert. denied, Remeta v. Florida, 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988); Baker v. State, 241 So.2d 683 (Fla.1970) (evidence that codefendant was actor in another robbery three or four hours after crime charged relevant to question of his involvement in the crime charged); Cornelius v. State, 457 So.2d 579 (Fla. 2d DCA 1984) (participation by defendant wife with her husband in prior criminal act was sufficient to justify admission of prior act under "Williams Rule" notwithstanding that wife was principal actor in crime charged and not principal actor in prior criminal act).
570 So.2d at 1345. We agree that Remeta is similar. As in Remeta, we agree that evidence that appellant shot at the law enforcement officer in the California traffic stop was relevant to rebut appellant's contentions that it was Dennis Escobar who shot Estefan in Miami, that appellant did not tell him to do it, and that appellant was merely in the vehicle with Dennis. However, we do not agree that the evidence was relevant to prove identity because appellant did not deny identity in the trial. The instruction which the court gave in respect to this testimony, which instruction refers to consciousness of guilt and identity, highlighted the erroneous reasons for the admission of this testimony.[9] Furthermore, as appellant argues in issue four, the substantial testimony and number of exhibits entered into evidence by the trial court regarding the California shoot-out violated the rule that evidence of collateral crimes must not become the feature of a trial. See Steverson v. State, 695 So.2d 687 (Fla.1997); Stano v. State, 473 So.2d 1282, 1289 (Fla.1985). Photographs relevant to the California shoot-out and a sketch portraying the scene of the shoot-out shall not be admitted in the new trial.[10]
In the new trial, the California shoot-out with law-enforcement officers can be introduced only through limited evidence for two purposes. The first is to rebut any assertion by appellant that Dennis Escobar acted alone and without any direction from appellant or participation by appellant in the Estefan murder. The second is to show the context of why appellant was hospitalized and under treatment when he made statements to law *998 enforcement officers concerning the crimes for which he is being tried in this case.
We do not agree with appellant in respect to the other evidence he challenges in his third issue and which the district court found to be admissible. The first of these items of evidence was Angel Bonilla's testimony that appellant told Bonilla he carried a gun and he would kill a police officer before he would go back to jail. We conclude that the statement is admissible pursuant to section 90.803(3)(a)(1),(2), Florida Statutes (1989).[11] The statement is relevant to appellant's motive for the murder of Estefan, and it is a statement of a plan establishing appellant's then existing state of mind and explaining his subsequent conduct. We held a similar statement to be admissible in Jones v. State, 440 So.2d 570, 577 (Fla.1983). We here hold that appellant's statement to Bonilla is a relevant exception to the hearsay rule and may properly be admitted against appellant in his new trial. Likewise, for the reasons stated by the district court, 570 So.2d at 1345-46, we believe the evidence concerning the outstanding California warrants was admissible. The existence of the outstanding warrants is relevant to show appellant's motive for participating in the Estefan murder.
Appellant further asserts that even if the testimony about appellant's statement to Bonilla and the prior crimes and arrest warrants is relevant, this evidence is so inflammatory that its probative value is outweighed by its prejudicial effect in violation of section 90.403, Florida Statutes (1989). Almost all evidence introduced during a criminal prosecution is prejudicial to a defendant. Amoros v. State, 531 So.2d 1256, 1260 (Fla.1988). In reviewing testimony about a collateral crime that is admitted over an objection based upon section 90.403, a trial judge must balance the import of the evidence with respect to the case of the party offering it against the danger of unfair prejudice. Id. Evidence should be excluded only when unfair prejudice substantially outweighs the probative value of the evidence. Id. Based upon our review of the record, we conclude that the trial judge correctly admitted evidence regarding appellant's statement to Bonilla and outstanding arrest warrants. See, e.g., Williamson v. State, 681 So.2d 688, 696 (Fla.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1561, 137 L.Ed.2d 708 (1997); Jackson v. State, 522 So.2d 802, 806 (Fla.1988); Washington v. State, 432 So.2d 44, 47 (Fla. 1983). We find that the import of the evidence outweighs the danger of unfair prejudice.
As to appellant's fifth issue, we agree with his contention that the testimony by Douglas Saballos that appellant bragged about being known as the "bandit of El Camino Real" because he was wanted for a "chain of holdups" should not be admitted into evidence at the new trial. Likewise, the testimony of Ramon Arguello, an acquaintance of appellant, that appellant had once held a pistol to a Arguello's chest and had threatened to kill him should not be admitted. These statements concerning these crimes and acts are inadmissible pursuant to section 90.404, Florida Statutes (1989), because the evidence is relevant solely to prove bad character. Accordingly, we direct the trial court to exclude in appellant's new trial the above-mentioned testimony by Saballos and Arguello.
In conclusion, we reverse appellant's convictions and sentences for first-degree murder and possession of a firearm during the commission of a felony. We do not disturb the conviction and sentence for automobile theft, which appellant did not challenge. Accordingly, we remand for a new trial.
It is so ordered.
*999 KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] Douglas and Dennis Escobar were tried and convicted in April 1989 of attempted first-degree murder for shooting a California Highway Patrol trooper who had stopped the Escobars for an alleged traffic violation in April 1988. Both Dennis and Douglas Escobar were sentenced to life in prison in California.
[2] Effective October 1, 1990, the legislature deleted from the hearsay exception of statement against interest, section 90.804(2)(c), Florida Statutes (1989), the following provision:

A statement or confession which is offered against the accused in a criminal action, and which is made by a codefendant or other person implicating both himself and the accused, is not within this exception.
Ch. 90-174, § 4, at 744-45, Laws of Florida.
[3] § 921.141(5)(b), Fla. Stat. (1989).
[4] § 921.141(5)(j), Fla. Stat. (1989).
[5] Appellant claims that: (1) the trial court erred in denying appellant's motion to suppress statements, confessions, and admissions; (2) appellant was denied his right to effective assistance of counsel because a court-appointed attorney jointly represented appellant and his codefendant for purposes of an interlocutory appeal; (3) the Third District Court of Appeal erred in ruling that evidence concerning appellant's statement, collateral crimes, and arrest warrants was admissible; (4) the trial court erred in admitting photographs and sketches concerning appellant's collateral crimes; (5) the trial court erred in admitting testimony that appellant was known as the "bandit of Camino Real" and that appellant once held a pistol to a friend's chest; (6) a special master erred in ruling that the trial judge did not conduct ex parte communications with the prosecutor regarding the State's motion for rejoinder; (7) the trial court erred in granting the State's motion for rejoinder or consolidation of appellant's trial with that of his codefendant; (8) the trial court erred in refusing to allow appellant to cross-examine the State's expert witness at a competency hearing; (9) the trial court erred during jury selection in refusing to conduct an inquiry pursuant to State v. Neil, 457 So.2d 481 (Fla.1984), into the State's nine challenges of minority prospective jurors; (10) the trial court erred in restricting appellant's use of challenges during jury selection; (11) the evidence was insufficient to show that appellant committed first-degree murder; (12) the cumulative effect of the foregoing errors requires reversal; (13) a special master erred in ruling that the trial judge and prosecutor did not engage in ex parte communications the day before sentence was pronounced; (14) the trial court erred during the penalty phase in refusing to give a limiting instruction regarding the doubling of aggravating factors; (15) the trial court erred during the penalty phase in excluding testimony of four witnesses who had just arrived from Nicaragua; (16) the State's use of similar-fact evidence during the guilt phase affected the jury's determination in the penalty phase; (17) the death penalty is not warranted under a proportionality review.
[6] Florida Rule of Criminal Procedure 3.152(b)(2) provides:

If a defendant moves for a severance of defendants on the ground than an oral or written statement of a codefendant makes reference to him or her but is not admissible against him or her, the court shall determine whether the state will offer evidence of the statement at the trial. If the state intends to offer the statement in evidence, the court shall order the state to submit its evidence of the statement for consideration by the court and counsel for defendants and if the court determines that the statement is not admissible against the moving defendant, it shall require the state to elect 1 of the following courses:
(A) a joint trial at which evidence of the statement will not be admitted;
(B) a joint trial at which evidence of the statement will be admitted after all references to the moving defendant have been deleted, provided the court determines that admission of the evidence with deletions will not prejudice the moving defendant; or
(C) severance of the moving defendant.
[7] Appellant's brief states that appellant made a statement during the night of April 27-28. However, the State's brief states that what is referred to as the April 27 statement was actually made on May 28. Appellant's reply brief does not rebut the State on this point. In the record of the suppression hearing, appellant's counsel refers to a statement by appellant on May 28. The trial court ruled on a statement it stated was dated May 28. We find this confusion to be of no import because the State did not offer a statement of May 28. We therefore make no decision regarding any statement of May 28.
[8] In Williams v. State, 110 So.2d 654 (Fla.1959), we held that similar fact evidence, such as testimony concerning a collateral crime, is not admissible if it goes only to show a defendant's bad character or propensity. Id. at 662. Williams has been codified as section 90.404(2)(a), Florida Statutes (1989), which is known as the Williams rule and provides:

(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
[9] The instruction was:

[T]he testimony, the evidence, which you are about to receive from this witness, some of it concerns evidence of other crimes allegedly committed by the defendants and will be considered by you for the limited purpose of proving consciousness of guilt as to both defendants and as to identity insofar as Douglas Escobar is concerned and you should consider it only as it relates to those issues.
[10] Our review of the written trial record indicates that the sketch and eight photographs relevant to the California shoot-out were admitted as exhibits in the trial. However, the record forwarded to this Court contains only three photographs of the shoot-out scene and a photograph of the injured California law enforcement officer.
[11] Section 90.803(3)(a)(1) and (2), Florida Statutes (1989), provides, in relevant part, a hearsay exception for:

(3) THEN EXISTING MENTAL, EMOTIONAL, OR PHYSICAL CONDITION.
(a) A statement of the declarant's then existing state of mind, emotion, or physical sensation, including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health, when such evidence is offered to:
1. Prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when such state is an issue in the action.
2. Prove or explain acts of subsequent conduct of the declarant.