FISHMAN, JANE D., Associate Judge.
Appellant Shelby Adderly was convicted as charged of two counts of robbery with a deadly weapon, two counts of aggravated assault on a person sixty-five years of age or older, and one count of burglary of an occupied conveyance with assault or battery, and was sentenced to life in prison. Because the trial court improperly admitted evidence that four months after the crimes herein Appellant gave the police a false name and ran, we reverse and remand for a new trial.
The facts material to this appeal are as follows. On October 11, 2007, Eleanor Levine and Marvin Reiner were returning to Ms. Levine’s car after dinner at a restaurant in West Palm Beach. Ms Levine noticed a black man wearing red pants or shorts on the street. After she entered her car, but before closing the car door, a man pointed a gun at her. During the course of the robbery, the man’s face was very close to Ms. Levine’s face, the car was parked under a street lamp, and the car’s interior light was on. Ms. Levine surrendered her purse to the man, and Mr. Rein-er gave the man his wallet. The man fled, and Ms. Levine and Mr. Reiner returned to the restaurant to call the police.
Deputy Mendenhall responded to the call and Ms. Levine told the deputy that *169 she believed the robber was the man she had seen walking outside the restaurant, that he was a black man wearing a dark hat and shirt and red pants or shorts. Ms. Levine and Mr. Reiner remained at the scene at the deputy’s request while she issued a BOLO and called for a police dog. Within several minutes Appellant was apprehended by another officer, and Deputy Mendenhall drove Ms. Levine and Mr. Reiner to the scene of the apprehension to see if they could identify the suspect. When they arrived, the location had been barricaded off, multiple police cars were present, along with television crews, lights, and cameras from the television show COPS, which was filming these events. Appellant was handcuffed near an ambulance, and multiple police officers were in the area wearing helmets and vests, and carrying assault rifles.
Mr. Reiner was uncertain if Appellant was the robber because the robber had been wearing a hat. However, when Deputy Mendenhall showed Mr. Reiner a hat that had been found near Appellant, he identified Appellant as the robber. Ms. Levine immediately identified Appellant as the robber, once she was brought near enough to see him. She later asked the police if Appellant had done this before, and was told that Appellant had a record. In addition, she later researched Appellant on the internet.
Appellant moved to suppress the out-of-court identifications and to preclude any in-court identifications.[1] After a hearing, the trial court ruled that Ms. Levine’s out-of-court identification was admissible, finding that, although the show-up procedure was suggestive, there was no substantial likehhood of irreparable misidentification, and an in-court identification did not have to be precluded as tainted. Ms. Levine did indeed identify Appellant at trial.
In addition to other evidence adduced at trial, the state proffered testimony of Deputy Mark Lanier that on February 9, 2008, four months after Appellant’s arrest for this incident, Lanier came in contact with Appellant on the street, and that Appellant gave the deputy a false name and ran from him. Over Appellant’s objection, and over the trial court’s own stated concern that the evidence was attenuated, the trial court nevertheless permitted the testimony to be presented to the jury. On cross examination, Deputy Lanier testified that Appellant had been taken to jail on the night of his arrest, that Appellant remained in jail for thirty days without the state filing charges, and that Appellant was then released from jail. Deputy Lanier also admitted that Appellant told him he ran because he had a warrant out for him and he did not want to go to jail that day. The state argued to the jury that this was evidence of flight relevant to Appellant’s consciousness of guilt of this robbery and assault, even though the warrant was for the separate felony offense of failure to appear in court, albeit on this offense.
Appellant first claims that the trial court erred in denying his motion to suppress the identification made by Ms. Levine, arguing that the out-of-court identification was unduly suggestive and that there was no sufficient independent basis to validate the in-court identification. It is well settled that a show-up, such as took place here, is inherently suggestive because a witness is presented with only one suspect for identification. Perez v. State, 648 So.2d 715, 719 (Fla.1995); Blanco v. State, 452 So.2d 520, 524 (Fla.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985); Anderson v. State, *170 946 So.2d 579, 581 (Fla. 4th DCA 2006). However, a show-up is not invalid if it does not give rise to a substantial likelihood of irreparable misidentification given the totality of the circumstances.
The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the witness’ prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). In the instant case, the identification of Appellant by Ms. Levine was made very shortly after the crime, with no hesitation. During the assault, Levine and her assailant were close to each other, and, while it was nighttime, the interior car lights were on and the car itself was parked directly beneath a street light.
The trial court considered all those factors, along with others, and ruled that the show-up identification was admissible because it did not give rise to a substantial likelihood of irreparable misidentification. As this court has previously held, the decision to admit a pre-trial identification is within the sound discretion of the trial court, and may be overturned only upon a showing of an abuse of that discretion. Anderson, 946 So.2d at 581; Walker v. State, 776 So.2d 943, 945 (Fla. 4th DCA 2000). The trial court here did not abuse its discretion in admitting the identification testimony.
Appellant also claims error in the admission of evidence that he gave a false name and ran from a police officer four months after this crime. Evidence of flight is admissible as being relevant to infer consciousness of guilt only where sufficient evidence exists to establish that the defendant fled to avoid prosecution of the charged offense. Escobar v. State, 699 So.2d 988, 995 (Fla.1997), abrogated on other grounds by Connor v. State, 803 So.2d 598 (Fla.2001); Merritt v. State, 523 So.2d 573, 574 (Fla.1988). The fact that a defendant has committed more than one crime within a short period of time does not preclude introduction of the evidence of flight, provided a sufficient evidentiary nexus exists to permit a jury to reasonably infer consciousness of guilt of the offense on trial from the flight. Hertz v. State, 803 So.2d 629, 644 (Fla.2001); Escobar, 699 So.2d at 995; see also Bundy v. State, 471 So.2d 9, 21 (Fla.1985). The determination of whether the state has established a sufficient nexus to introduce evidence of flight is made on the particular facts of each case. Thomas v. State, 748 So.2d 970, 982 (Fla.1999).
In Merritt, the Florida Supreme Court concluded that the evidence of flight was erroneously introduced because the flight occurred three years after the crime. 523 So.2d at 574. Similarly, in Escobar, that court concluded that evidence of flight was inadmissible because it occurred in another state twenty-seven days after the murder at issue and the defendant had no reason to believe he was a suspect in that murder at the time of the flight. 699 So.2d at 996. On the other hand, in Bundy, the supreme court concluded that the evidence of flight was properly introduced where the flight occurred only several days after the victim disappeared. 471 So.2d at 21. In Straight v. State, 397 So.2d 903 (Fla.1981), and in Shellito v. State, 701 So.2d 837, 840-41 (Fla.1997), the defendants used deadly force against officers and fled from the officers within a few days of the murders for which those defendants were on trial. In both cases, the supreme court concluded that flight was properly admitted as *171 relevant to consciousness of guilt. And in Thomas, the court found that a substantial nexus to the charged murder was established and that the trial court had not abused its discretion in admitting evidence of the defendant’s flight in a high-speed chase eleven days after the murder for which the defendant was on trial. In Virgo v. State, 931 So.2d 1010, 1012-13 (Fla. 4th DCA 2006), this court found no abuse of discretion where the trial court admitted testimony of the defendant’s flight four days after the robbery for which he was on trial, even though his flight could also have been attributed to another robbery that Virgo might have committed just before the flight occurred. A sufficient nexus to the charged crime was established there because the evidence showed that Virgo used the same truck, the same gun, and wore the same clothes in both the robberies, which were conducted identically, just a few days apart.
In the instant case, however, we conclude that the state failed to present sufficient evidence to establish that Appellant’s flight was reasonably due to this crime, or established consciousness of guilt of the crimes for which he was on trial. The flight was four months after Appellant’s arrest for these charges, and three months after Appellant’s release from custody on these charges, after the state had failed to timely file any charges against Appellant. In addition, Appellant told the officer that he fled because he knew there was a warrant out for his arrest for failure to appear in court. Under these circumstances, the evidence was simply not relevant to any issue at trial. Thus, the trial court abused its discretion in admitting the evidence and permitting the state to argue to the jury that it could infer that Appellant’s giving of a false name and running from the officer was evidence of his consciousness of guilt of the offenses for which he was on trial.
Nor can we say that the error here was harmless beyond a reasonable doubt. As noted earlier, the show-up which resulted in the out-of-court identification of Appellant was inherently suggestive and a close call for the trial court on whether the suggestiveness of the identification resulted in a substantial likelihood of irreparable misidentification. While the totality of the circumstances did not establish that the trial court abused its discretion in admitting the identification testimony, we are unable to say, beyond a reasonable doubt, that the erroneous admission of the evidence of flight did not improperly contribute to Appellant’s convictions of these charges. Because we cannot say that the error was harmless beyond a reasonable doubt, State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986), we reverse and remand for a new trial.

Reversed and remanded.

GROSS, C.J., and WARNER, J„ concur.

. Mr. Reiner's out-of-court identification was suppressed and in-court identification pre-eluded as a result of a stipulation between the state and defense.