QUINCE, J.,
concurring in part and dissenting in part.
I concur in upholding the murder conviction and in reducing the penalty to a life sentence. Because I conclude that the record does not sufficiently support the trial court’s finding of HAC, I respectfully dissent from the Court’s decision regarding this aggravator.
The trial court’s finding that Proby “suffered immeasurable fear and terror as the events played out, from the inception when [Davis] stated on the telephone that he was going to come kill her,” is not supported by the record. It is not clear from the record that Proby believed, or had any reason to believe, that Davis’s threat was legitimate. Several witnesses testified that Davis had never been a violent person before these events. Randy Reddick said during the guilt phase that Davis was normally “cool, calm, [and] collected.” Davis’s friend, Kerron Matthew, testified at the penalty phase that even though Davis was bullied in school, he never initiated any confrontations, and in several instances managed to diffuse situations that might have degenerated into violence. The trial court also found as a mitigating circumstance that although Davis had admitted to selling cocaine, “he had never been previously arrested or convicted of any crimes, and has no history of violent criminal activity.”
Moreover, Proby and Harrell’s behavior after the threat indicates that they did not believe Davis was in fact on his way to Proby’s apartment to kill her. When Pro-by told Harrell about Davis’s threat, Harrell advised her to call the police, but there is no evidence that Proby did so. Rather than leave the apartment, Harrell tried to call Davis. When he did not answer, she sent him a text message asking him to call her. Harrell testified that when Davis arrived less than fifteen minutes later, Proby let him into the apartment and closed the door behind him. When Davis told Proby to get on the floor, Proby did so without resisting. It is not clear whether she believed, even at that point, that Davis was really going to kill her. The medical examiner testified that Proby died instantly from the first gunshot. The trial court found as a mitigating circumstance that *504 “the victim was rendered unconscious immediately.”
While this Court has upheld the HAC aggravator based upon the emotional suffering of the victim, we have done so only when specific evidence has demonstrated that the victim suffered extreme fear and terror. In Preston v. State, for example, the victim was a convenience store clerk who was abducted during the course of a robbery. 607 So.2d 404 (Fla.1992). The victim’s “nude, mutilated body was found the next day in an open field a few miles from the store. She had sustained multiple stab wounds and lacerations resulting in her near decapitation.” Preston, 607 So.2d at 406. We found the trial court’s HAC finding to be supported by the evidence where “Preston forced the victim to drive to a remote location, made her walk at knifepoint through a dark field, forced her to disrobe, and then inflicted a wound certain to be fatal.” Id. at 409.
The trial court in this case also cited Parker v. State, 873 So.2d 270 (Fla.2004). There, as in Preston, the victim was abducted from her job at a convenience store, driven to a remote location, and murdered with a knife. In upholding HAC, we cited the following evidence:
The victim, an eighteen year old girl, was afraid to work on the night of her abduction. She experienced great fear and terror during the robbery and during the thirteen mile, twenty minute ride to her death. She was frightened and was asking what the defendants were going to do to her, in effect begging that her life not be taken. Hair from the victim, consistent with being ripped from her head, was found inside [the abductors’] car. The victim’s bladder was completely voided while she was alive, prior to being shot. While she was alive she suffered an excruciatingly painful stab wound to her abdomen from a filleting type of fishing knife. The evidence clearly established that the stab wound was inflicted while she struggled. A defensive injury received during a struggle was found on her hand.
Id. at 287.
In Wyatt v. State, 641 So.2d 1336, 1341 (Fla.1994), the defendant and his accomplice robbed a Domino’s Pizza restaurant and murdered three employees. In upholding HAC, this Court described the circumstances of the case:
The evidence shows that the victims were subjected to at least twenty minutes of abuse prior to their deaths. Wyatt pistol-whipped William Edwards when the safe did not contain enough money for his satisfaction. Wyatt also undressed Frances Edwards completely and raped her a short distance from where the other two employees were being held. Wyatt then killed his victims in front of each other. William Edwards begged for his life and stated that he and Frances, his wife, had a two-year-old daughter at home. Wyatt shot him in the chest. Upon seeing her husband shot, Frances Edwards began to cry and Wyatt then shot her in the head while she was in a kneeling position. Having witnessed the shooting of his coworkers, Michael Bornoosh started to pray. Wyatt put his gun to Bornoosh’s ear and before he pulled the trigger told him to listen real close to hear the bullet coming. When Wyatt realized William Edwards was still alive he went back and shot him in the head.
Id. at 1340-41.
In Swafford v. State, 533 So.2d 270 (Fla.1988), as in Parker and Preston, the victim was abducted from the gas station where she worked, driven to a remote area, and murdered. The victim in that case was also sexually abused prior to her death. In *505 upholding HAC, this Court observed: “In addition to factors based on events preceding the shooting — abduction, fear, mental anguish, and sexual abuse — the killing itself occurred in such a way as to show a wanton atrocity. Swafford fired nine bullets into the victim’s body, most of them directed at the torso and extremities.” Id. at 277.
Finally, the trial court cited Hannon v. State, 638 So.2d 39 (Fla.1994). There, the defendant and his accomplices broke into a house and murdered two roommates. We upheld HAC as to the murder of the first roommate based on the specific facts surrounding his brutal death by stabbing. As to the second roommate, we stated: “Carter witnessed his friend and roommate being savagely stabbed. When the attackers turned on Carter, he pled for his life as he retreated to an upstairs bedroom. There, he hid under a bed until Hannon entered the room, and fired six shots into the huddled, defenseless Carter.” Id. at 43. In finding the circumstances sufficient to support HAC, we explained that “the victim undoubtedly suffered great fear and terror prior to being murdered.” Id.
The murder of Myosha Proby was unlike any of the cases cited by the trial court. There was no evidence that the victim suffered extreme fear or terror pri- or to Davis’s arrival at her apartment. Unlike Preston, Parker, and Swafford, this case did not involve the victim being abducted and driven to a remote area where death was certain to occur. Unlike Wyatt and Hannon, the victim did not first witness the death of a relative, friend or coworker.
Based on the absence of any evidence concerning Prob/s mental state, I would find that HAC is not supported by competent, substantial evidence, and strike the trial court’s finding as to this aggravator.
PARIENTE and PERRY, JJ„ concur.