397 So.2d 903 (1981)
Ronald J. STRAIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. 52460.
Supreme Court of Florida.
March 19, 1981.
Rehearing Denied June 2, 1981.
*904 H. Randolph Fallin, Jacksonville, for appellant.
Jim Smith, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This cause is before the Court on appeal from a judgment of the Circuit Court of the Fourth Judicial Circuit, in and for Duval County. Appellant Ronald J. Straight was convicted of murder in the first degree and sentenced to death. We have jurisdiction of his appeal. Art. V, § 3(b)(1), Fla. Const. We have given careful consideration to each of the appellant's stated grounds of appeal, as the discussion to follow will show. We have reviewed the entire record of the proceedings below in order to determine whether the jury's verdict of guilt was supported by competent, substantial evidence. *905 We have also reviewed the sentencing proceeding to determine whether the sentence of death is appropriate to this case under the law. § 921.141(4), Fla. Stat. (1975). We affirm the conviction and the sentence.
The evidence at trial showed that at the time of the crime the appellant and Timothy Charles Palmes were living in an apartment also occupied by Jane Albert and her seven-year-old daughter, Stephanie. Mrs. Albert was employed by James Stone at his furniture store. On the day of the crime, in accordance with a plan conceived by Jane Albert, Palmes, and the appellant, James Stone was lured to the apartment. When Stone left the store to go to the apartment, Albert telephoned Palmes and Straight to tell them that Stone was on his way.
When Stone arrived at the apartment, the seven-year-old Stephanie, on instructions from Palmes and Straight, admitted him and directed him to one of the bedrooms. There Palmes and Straight bound him with wire and placed him in a large box they had constructed in the apartment. They tormented him with hammer blows and stabbings for approximately half an hour before he died from the knife wounds. Then they sealed the box, removed it to a truck, and dumped it in the St. Johns River.
The next day appellant, Palmes, Albert, and Stephanie left Florida taking Stone's car, his credit cards, money from his wallet, and several days' cash receipts from the furniture store. They were arrested in California. Straight fled as police officers approached him and attempted to avoid arrest by firing at the officers.
Mrs. Albert was given immunity and testified at trial as a witness for the state.
Palmes and Straight were jointly indicted for murder in the first degree. Their trials were severed; Palmes was tried first and convicted. Among the items of evidence introduced against him was his confession. There was news media coverage of the fact that he made a confession and also of his later retraction and his repudiation of the confession at trial.
Appellant presents five points on appeal of his conviction. Among them is the argument that the court failed to adequately instruct the jury on the limited use they could make of appellant's prior convictions, which were brought out on his cross-examination, and that this failure was reversible error. He argues that after eliciting the fact of the six convictions on cross-examination of appellant, the prosecutor subsequently commented on them. Thus, he argues, the judge had a duty to instruct the jury that the evidence of prior convictions could only be used in evaluating the defendant's credibility and for no other purpose. We decline to discuss the merits of this argument because the defense attorney at trial did not object to the instruction on credibility or ask for a different or additional one. "An appellate court must confine itself to a review of only those questions which were before the trial court and upon which a ruling adverse to the appealing party was made." State v. Barber, 301 So.2d 7, 9 (Fla. 1974). In order to secure appellate review of jury instructions, the defendant must make known to the court what charges he wants the court to give or not give and his grounds therefor. See Williams v. State, 285 So.2d 13 (Fla. 1973); Fla.R.Crim.P. 3.390(d).
Appellant's remaining arguments are: (1) that the court should have granted a change of venue; (2) that the court should have excluded from the evidence certain photographs said to be gruesome and inflammatory; (3) that the court erred in admitting into evidence the depositions of two California police officers which established that appellant resisted arrest there with deadly force; and (4) that the court should have granted a mistrial when on cross-examination of the appellant the state's counsel asked a question, other than permitted impeachment, about unrelated criminal activity.
Appellant contends that the denial of his motion for change of venue deprived him of a fair trial because of widespread publicity. The record shows that the case received considerable media attention and that knowledge of the murder was widespread. *906 Four-fifths of the prospective jurors, and eight of the twelve jurors who served on the jury, had some prior knowledge of the case. The crucial consideration, however, is not knowledge, but whether such knowledge rendered the jurors prejudiced.
A motion for change of venue is a matter addressed to the sound discretion of the trial court, and the trial court's decision will generally be upheld if there is no showing of a palpable abuse of discretion. Johnson v. State, 351 So.2d 10 (Fla. 1977); McNealy v. State, 17 Fla. 198 (1879).
The motion for a change of venue based on widespread prejudicial publicity called for a determination by the trial court of
whether the general state of mind of the inhabitants of the community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom.
Manning v. State, 378 So.2d 274, 276 (Fla. 1979); Jackson v. State, 359 So.2d 1190 (Fla. 1978), cert. denied, 439 U.S. 1102, 99 S.Ct. 881, 59 L.Ed.2d 63 (1979); Kelley v. State, 212 So.2d 27 (Fla. 2d DCA 1968).
Appellant argues that the news media coverage of his codefendant's confession brings this case within the rule of Oliver v. State, 250 So.2d 888, 890 (Fla. 1971), in which this Court said that in general, "when a `confession' is featured in news media coverage of a prosecution, ... a change of venue motion should be granted whenever requested... ." It is not clear in the instant case, however, that the confession of Palmes implicated both himself and his co-defendant, as was the case in Oliver. Oliver dealt with a crime committed during a period of racial unrest. The victim was white and the defendants were black. The community in question was a relatively small one. Compare Dobbert v. State, 328 So.2d 433 (Fla. 1976) aff'd, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) with Manning v. State, 378 So.2d 274 (Fla. 1979). The circumstances here are different.
Furthermore, the general rule stated in Oliver has been restricted and refined. In Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978), the appellant argued that the rule of Oliver required a change of venue because of publicity surrounding his confession. The Court distinguished Oliver, and pointed out that Hoy's retraction of his confession was covered with equal prominence in the newspaper and that none of the jurors had actually read the articles in question. We hold that Oliver does not require reversal in the present case.
The trial judge here presided over a long and painstaking voir dire procedure. The record shows that prospective jurors exhibiting even a hint of prejudice were excused. The court granted the appellant extra peremptory challenges and defense counsel did not use them all. The court did not abuse its discretion in denying the motion for change of venue.
Appellant next argues that the court erred in admitting a number of photographs over the objection that they were not relevant to any material issues in the case. In support of this contention at trial, the appellant stated his willingness to stipulate to several factual matters which he argued were the only facts the photographs were relevant to prove. Among the photographs objected to were several depicting the victim's body which was recovered from the river after twenty days. The pictures showed the wounds inflicted on the deceased and were quite gruesome because of decomposition. The basic test of admissibility of photographs, however, is not necessity, but relevance. Bauldree v. State, 284 So.2d 196 (Fla. 1973). Photographs can be relevant to a material issue either independently or by corroborating other evidence. State v. Wright, 265 So.2d 361 (Fla. 1972).
Relevancy is to be determined in the normal manner, that is, without regard to any special characterization of the proffered evidence. Under this conception, the issues of "whether cumulative," or "whether photographed away from the scene," are routine issues basic to a determination *907 of relevancy, and not issues arising from any "exceptional nature" of the proffered evidence.
Id. at 362.
In Young v. State, 234 So.2d 341 (Fla. 1970), the Court had for consideration the contention that gruesome photographs denied the appellant a fair trial. Forty-five photographs in all were admitted, including twenty-five showing the partially decomposed body of the victim. The victim had drowned. The Court said:
The fact that the photographs are offensive to our senses and might tend to inflame the jury is insufficient by itself to constitute reversible error, but the admission of such photographs, particularly in large numbers must have some relevancy, either independently or as corroborative of other evidence.
Several of the photographs were unquestionably relevant to the issues before the jury, as one color photograph depicting a tatoo on the victim's arm for purposes of establishing his identification. One issue before the jury was whether the deceased had committed suicide or whether he was murdered, the specific question being whether the victim could possibly have arranged strands of wire around himself in the manner in which it was found upon his recovery from the lake. Several of the photographs taken in the office of the County Medical Examiner at the time of the autopsy were relevant to this issue, as they revealed the manner in which several strands of wire had been wrapped around the victim's neck and body.
We do not intend to invade the discretion of the state in the selection of evidence which it chose to present to the jury, or the discretion exercised by the trial court in admitting such evidence, but we must insure that both state and trial court act within reasonable limits. The very number of photographs of the victim in evidence here, especially those taken away from the scene of the crime, cannot but have had an inflammatory influence on the normal fact-finding process of the jury. The number of inflammatory photographs and resulting effect thereof was totally unnecessary to a full and complete presentation of the state's case. The same information could have been presented to the jury by use of the less offensive photographs whenever possible, and by careful selection and use of a limited number of the more gruesome ones relevant to the issues before the jury. In concluding that reversible error was committed by introduction of an unnecessarily large number of inflammatory photographs, we are merely applying to the facts of this case a principle reiterated in Leach v. State [132 So.2d 329, 331-32 (Fla. 1961), cert. denied, 368 U.S. 1005, 82 S.Ct. 636, 7 L.Ed.2d 543 (1962)].
"[W]here there is an element of relevancy to support admissibility then the trial judge in the first instant and this Court on appeal must determine whether the gruesomeness of the portrayal is so inflammatory as to create an undue prejudice in the minds of the jury and detract them from a fair and unimpassioned consideration of the evidence."
Young v. State, 234 So.2d at 347-48 (footnotes omitted). Thus Young v. State and the cited case of Leach v. State recognize that even relevant photographs sometimes must be excluded if they are unduly prejudicial, but the pictures in the present case were not repetitive as in Young and were of greater relevance. We hold that all the photographs admitted were relevant either independently or as corroborative of other evidence, specifically, the testimony of witnesses. They were few in number and included only a very few gruesome ones which were relevant to corroborate testimony as to how death was inflicted. The photographs were properly admitted.
Appellant's third contention is that it was error to admit the testimony establishing that appellant fired his gun in the direction of police officers in California. He argues that evidence of collateral criminal activity is inadmissible because of its potential prejudicial impact.
*908 It is improper for a jury to base a verdict of guilt on the conclusion that because the defendant is of bad character or has a propensity to commit crime, he therefore probably committed the crime charged. See, e.g., Winstead v. State, 91 So.2d 809 (Fla. 1956); Nickels v. State, 90 Fla. 659, 106 So. 479 (1925). Therefore, evidence of criminal activity not charged is inadmissible if its sole purpose is to show bad character or propensity to crime. But evidence of criminal activity not charged is admissible if relevant to an issue of material fact. Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). If irrelevant, its admission is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged.
When a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, concealment, resistance to lawful arrest, or other indications after the fact of a desire to evade prosecution, such fact is admissible, being relevant to the consciousness of guilt which may be inferred from such circumstance. State v. Young, 217 So.2d 567 (Fla. 1968), cert. denied, 396 U.S. 853, 90 S.Ct. 112, 24 L.Ed.2d 101 (1969); Daniels v. State, 108 So.2d 755 (Fla. 1959); Blackwell v. State, 79 Fla. 709, 86 So. 224 (1920).
We hold that the evidence of appellant's flight from police and use of his gun was relevant to the issue of his guilty knowledge and thereby to the issue of guilt. Appellant was willing to use at least the threat of deadly force to try to avoid arrest. This is probative of his mental state at the time. The depositions were properly admitted.
Appellant's final contention concerns a question asked him by the state's counsel on cross-examination. Appellant's motion for mistrial made when the question was asked was denied. His objection to the question was sustained and his request that the jury be instructed to disregard the question was granted. So, the question was never answered. The challenge now is not to the admission of any evidence but to the very impropriety of the question. Appellant contends that that impropriety required the declaration of a mistrial.
During the direct examination of Jane Albert, she told of how she had purchased a gun for appellant in accordance with a request from him. On cross-examination, defense counsel asked Albert if there had been talk of appellant doing a drug deal in Texas. She replied that she knew nothing of a Texas deal but had heard of a plan to procure some drugs from a Dr. Day. Neither the state nor the defense questioned her further regarding Dr. Day or the nature of the transaction that was talked about.
Appellant took the witness stand in his own defense. On cross-examination the state's counsel asked him about his activities on the day of the murder. He testified that during the afternoon or evening of that day he went to visit a woman in order to obtain some drugs. The prosecutor asked whether he knew the source of the drugs.
Q. What doctor did she go to to get her prescriptions?
A. I have no idea.
Q. Would it have been Dr. Day?
A. I don't have no idea.
Q. You never heard that name mentioned?
A. No, sir.
Q. Isn't it true that it was Dr. Day that you were going to use the pistol on that Jane bought you?
Transcript of testimony at 832-33. Defense counsel immediately asked to approach the bench and moved for a mistrial on the ground that the prosecutor's question constituted a suggestion of unrelated criminal activity prejudicing the jury against the defendant. The court denied the motion for mistrial but sustained the objection. The question was not answered and the jury was instructed to disregard the question.
Appellant argues that the denial of his motion for a mistrial was reversible error. He grounds this argument on the rule that *909 evidence of unrelated criminal activity of an accused is inadmissible. Evidence of separate crime, however, is generally admissible if somehow relevant to an issue of material fact. There are a number of recognized ways that separate criminal activity can be relevant. Williams v. State, 117 So.2d 473 (Fla. 1960).
On the other hand, it is generally harmful error "to admit evidence of other or collateral crimes independent of and unconnected with the crime for which the defendant is on trial." Nickels v. State, 90 Fla. 659, 685, 106 So. 479, 488 (1925). As stated above, the reason for this rule, establishing the harmfulness of the error in admitting a certain class of irrelevant evidence, is:
Evidence that the defendant has committed a similar crime, or one equally heinous, will frequently prompt a more ready belief by the jury that he might have committed the one with which he is charged, thereby predisposing the mind of the juror to believe the prisoner guilty.
Id. at 685, 106 So. at 488. The opinion in Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), told of how this recognition of the possible prejudicial impact led to the rule being stated as a rule of exclusion with certain exceptions rather than as a rule of admissibility. See, e.g., Winstead v. State, 91 So.2d 809 (Fla. 1956); Talley v. State, 160 Fla. 593, 36 So.2d 201 (1948); Whitehead v. State, 279 So.2d 99 (Fla. 2d DCA 1972).
Even when the evidence of separate criminal activity has relevance, it is possible for such evidence, as it is presented, to have an improper prejudicial impact that outweighs its probative value. See, e.g., Williams v. State, 117 So.2d 473 (Fla. 1960); Denson v. State, 264 So.2d 442 (Fla. 1st DCA 1972).
Appellant cites several cases where convictions were reversed because of the admission of evidence of unrelated crime, Ragusa v. State, 338 So.2d 1103 (Fla. 4th DCA 1976); Colbert v. State, 320 So.2d 853 (Fla. 1st DCA 1975), cert. denied, 330 So.2d 726 (Fla. 1976); Whitehead v. State, 279 So.2d 99 (Fla. 2d DCA 1973). In each of these cases, the defendant's objection was overruled and the state was permitted to confront the defendant with or admit evidence of accusations or arrests. Thus they do not resolve the issue in the present case which is whether the mere propounding of a question by the prosecutor, seeking to elicit testimony that would be irrelevant but which suggests the existence of unrelated criminal activity, is reversible error when the objection to the question is sustained, the witness does not answer, and the jury is instructed to disregard the question.
That the assistant state attorney's question, calculated to elicit irrelevant testimony and suggesting to the jury the existence of such prejudicial evidence, was highly improper, is without question. We do not believe, however, that the improper comment, by itself, was sufficient to require that the court grant the motion for a mistrial. Feldman v. State, 194 So.2d 48 (Fla. 4th DCA 1967). The appellant denied any involvement or knowledge of the crime charged. The improper comment did not tend to discredit any particular feature of appellant's account of his activities during the time the crime was being committed or undermine any particular theory of the defense. Its impropriety lay in its general attack on the defendant's character. In light of the overwhelming evidence against appellant, we find it inconceivable that the prosecutor's improper question might have affected the verdict. The motion for mistrial was properly denied.
After the separate proceeding on sentence was held, the jury returned a recommended sentence of death. The court deferred sentencing until after the receipt of a presentence investigation. A copy of the presentence investigation report was furnished to appellant prior to sentencing.
As aggravating circumstances, the court found that appellant committed the murder while under a sentence of imprisonment, § 921.141(5)(a), Fla. Stat. (1975), that the murder was committed in the course of a robbery, id. § 921.141(5)(d), that the murder was committed for pecuniary gain, id. § 921.141(5)(f), and that the murder was *910 especially heinous, atrocious, and cruel. Id. § 921.141(5)(h). The court found that there were no mitigating circumstances.
The trial judge's finding that appellant was under sentence of imprisonment was based on the fact that he was on parole from prison. We hold that this fact, established by evidence, supports the finding of this aggravating circumstance.
The trial judge's findings that the murder was committed in the course of a robbery and that it was committed for pecuniary gain are both based on the same aspect of the crime. Where such double recitation of aggravating circumstances based on a single aspect of the crime indicates that inflated consideration was accorded to the factor, it is error. Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). Where it is clear that the sentencing judge merely recited both statutory factors without giving improper double consideration to the single aspect in question, or where the absence of mitigating circumstances makes clear that any added weight accorded the factor did not tip the balance in favor of a sentence of death rather than life, the error of double recitation is harmless. See Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979); Elledge v. State, 346 So.2d 998 (Fla. 1977). We approve the finding of one statutory aggravating circumstance based on the commission of murder in the course of the felony of robbery.
The trial judge's finding that the capital felony was especially heinous, atrocious, and cruel was based on evidence that appellant directly participated in the murder inflicted by multiple stab wounds and bludgeoning. The evidence supports the factual findings and the facts establish this statutory factor. See, e.g., Washington v. State, 362 So.2d 658 (Fla. 1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979); Funchess v. State, 341 So.2d 762 (Fla. 1975), cert. denied, 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977).
Upon our review of the sentencing proceedings and the court's findings based on the whole record, we conclude that there was no prejudicial error in the sentencing phase and that the court properly found several aggravating circumstances and no mitigating circumstances. The sentence of death is proper.
The judgment of conviction of murder in the first degree is affirmed. The sentence of death, having been found to be appropriate to this case, is approved.
It is so ordered.
ADKINS, BOYD, OVERTON, ENGLAND and ALDERMAN, JJ., concur.
SUNDBERG, C.J., concurs in result only.