59 So.3d 303 (2011)
Jason Lee HAYWARD, Appellant,
v.
STATE of Florida, Appellee.
No. 2D09-5198.
District Court of Appeal of Florida, Second District.
April 20, 2011.
*304 James Marion Moorman, Public Defender, and Alisa Smith, Assistant Public Defender, Bartow, for Appellant.
*305 Pamela Jo Bondi, Attorney General, Tallahassee, and Tonja Rene Vickers, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Chief Judge.
The State tried Jason Lee Hayward on a single count of felony driving under the influence for an offense allegedly committed in 2008. Mr. Hayward took the stand in his own defense and explained why he refused to take a breath alcohol test. The State argued, and the trial court agreed, that Mr. Hayward's comments "opened the door" to impeachment with evidence of a prior unrelated conviction for driving under the influence. Because Mr. Hayward's comments did not open the door and there was no legal basis to introduce prior crime evidence, we reverse Mr. Hayward's judgment and sentence and remand for a new trial.
When Mr. Hayward took the stand in his own defense, his counsel asked him why he refused the arresting officer's requests that he take a breath alcohol test. He testified, "I've heard from people, and I've seen breath tests go wrong. You could have three Mountain Dews and blow a 0.01. I've seen it happen before, and." The State objected to Mr. Hayward's reference to Mountain Dews, and the trial court struck that from the record. Later, the State sought to impeach Mr. Hayward's comments with evidence regarding his 1992 DUI conviction, where he allegedly did take a breath test and the results were used against him. The defense objected, arguing that Mr. Hayward's comments did not "open the door" to prior crime testimony and that the potential for undue prejudice outweighed the evidence's minimal probative value. The trial court allowed the questions over the defense's objections, so the jury heard that Mr. Hayward was previously convicted for DUI.
Generally, evidence of unconnected crimes is inadmissible:
[I]it is generally harmful error "to admit evidence of other or collateral crimes independent of and unconnected with the crime for which the defendant is on trial." Nickels v. State, 90 Fla. 659, 685, 106 So. 479, 488 (1925). As stated above, the reason for this rule, establishing the harmfulness of the error in admitting a certain class of irrelevant evidence, is:
Evidence that the defendant has committed a similar crime, or one equally heinous, will frequently prompt a more ready belief by the jury that he might have committed the one with which he is charged, thereby predisposing the mind of the juror to believe the prisoner guilty.

Id. at 685, 106 So. at 488.
Straight v. State, 397 So.2d 903, 909 (Fla. 1981).
The Florida Evidence Code does provide an exception to this rule so that certain prior convictions can be admitted as impeachment evidence. Section 90.610, Florida Statutes (2008), titled "Conviction of certain crimes as impeachment," provides that a party may attack the credibility of a witness with evidence that the witness has been convicted of a crime punishable by a year or more in prison or a crime involving dishonesty or false statement. § 90.610(1). But the State cannot ask about the specifics of the convictions unless the defendant is untruthful about whether he has such prior convictions and how many of them there are. Livingston v. State, 682 So.2d 591, 592 (Fla. 2d DCA 1996).
In this case, the State did not ask Mr. Hayward whether he had prior qualifying convictions or how many. Instead, the prosecutor went straight to the *306 details of the 1992 DUI conviction, claiming that Mr. Hayward's testimony "opened the door" to testimony regarding the breath alcohol test associated with the 1992 conviction.
"Opening the door" is an evidentiary concept that permits the admission of otherwise inadmissible testimony in order to qualify, explain, or limit previously admitted testimony or evidence. Overton v. State, 801 So.2d 877, 900 (Fla.2001). The normally inadmissible evidence is allowed when fairness and the search for the truth require a fuller explication of evidence that otherwise would have been incomplete and misleading. Hudson v. State, 992 So.2d 96, 110 (Fla.2008). Thus, a party "opens the door" when it elicits misleading testimony or makes a factual assertion that the opposing party has a right to correct so that the jury will not be misled. Robertson [v. State], 829 So.2d [901,] 913 [(Fla.2002)]. For example, a defendant's evidence of his good character may open the door to impeachment with evidence of the defendant's bad character. Robertson, 829 So.2d at 912.
Austin v. State, 48 So.3d 1025, 1025 (Fla. 2d DCA 2010). In other words,
The concept of "opening the door" permits admission of inadmissible evidence for the purpose of qualifying, explaining or limiting testimony previously admitted. See Hudson v. State, 992 So.2d 96, 110 (Fla.2008), cert. denied, ___ U.S. ___, 129 S.Ct. 1360, 173 L.Ed.2d 621 (2009). This concept is based on considerations of fairness where "redirect examination reveals the `whole story of a transaction only partly explained' in cross examination." Love v. State, 971 So.2d 280, 286 (Fla. 4th DCA 2008) (quoting Bozeman v. State, 698 So.2d 629, 631 (Fla. 4th DCA 1997)).
Sinclair v. State, 50 So.3d 1223, 1226 (Fla. 4th DCA 2011).
After the trial court's ruling striking a portion of Mr. Hayward's testimony regarding breath test results, what remained in response to his counsel's inquiry asking why he refused the breath test was "I've heard from people, and I've seen breath tests go wrong." Mr. Hayward's testimony, at that point, did not "open the door" to questions regarding the details of his 1992 DUI conviction. He did not place the nature of his prior felony at issue. See, e.g., McCrae v. State, 395 So.2d 1145, 1152 (Fla.1980) (holding that prosecution was allowed to ask about details of defendant's prior conviction because defendant's testimony, without clarification through questions by the State, "could have deluded the jury into equating appellant's conviction of assault with intent to commit murder with his previous misdemeanors"); Burst v. State, 836 So.2d 1107, 1109 (Fla. 3d DCA 2003) (holding that defendant opened the door to cross-examination about the nature of two prior convictions when he volunteered, during questioning by his own counsel, that he had two prior convictions for possession and two prior convictions for grand theft but, in actuality, one of the possession convictions was for possession with intent to sell and one of the grand theft convictions was for grand theft auto). Essentially, Mr. Hayward's testimony was that he did not trust breath testing machines. The statement was not misleading or incomplete, nor was it a small part of a story that required further explanation in consideration of fairness to both sides. He only provided his subjective state of mind, his opinion or his belief of the equipment's unreliability.
Even had Mr. Hayward's limited testimony "opened the door," the potential for undue prejudice far exceeded the probative value of the testimony. See *307 § 90.403, Fla. Stat. (2008) ("Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice"). The issue of Mr. Hayward's refusal to take a breath test was minimally relevant at best. Informing the jury that Mr. Hayward had previously been convicted of the exact crime he was on trial for was extremely prejudicial. Consequently, the trial court also abused its discretion by failing to exclude the evidence on the basis that the potential for unfair prejudice outweighed its minimal probative value. See Straight, 397 So.2d at 909.
Finally, the State contends that even if the admission of this testimony was error, it was harmless. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). However, the State cannot prove "that there is no reasonable possibility that the error contributed to the conviction." Id. At trial, the State's evidence consisted of testimony from the arresting officer and a video of limited evidentiary value from the officer's dashboard camera. The jury's verdict rested largely upon weighing the credibility of the officer and Mr. Hayward. The improperly admitted evidence of Mr. Hayward's prior DUI conviction gave the State, through the officer's testimony, an unfair advantage in that credibility contest.
For these reasons, we reverse Mr. Hayward's conviction and sentence for driving under the influence and remand for a new trial.
SILBERMAN, J., Concurs.
WHATLEY, J., Dissents with opinion.
WHATLEY, Judge, Dissenting.
I respectfully dissent. Hayward testified in his own defense as to why he refused a breath test. His statement that "I've heard from people and I've seen such breath tests go wrong," opened the door to cross-examination. As noted by the majority opinion, this court has held:
"Opening the door" is an evidentiary concept that permits the admission of otherwise inadmissible testimony in order to qualify, explain, or limit previously admitted testimony or evidence. Overton v. State, 801 So.2d 877, 900 (Fla.2001). The normally inadmissible evidence is allowed when fairness and the search for the truth require a fuller explication of evidence that otherwise would have been incomplete and misleading. Hudson v. State, 992 So.2d 96, 110 (Fla.2008).
Austin, 48 So.3d at 1025.
A number of other Florida cases address this very point. In C.M. v. State, 698 So.2d 1306, 1307 (Fla. 4th DCA 1997), an officer testified that when he arrived on the scene to investigate an attempted robbery, C.M. fled. C.M. tried to diminish the officer's testimony by testifying that he fled to avoid a truancy arrest. Id. The Fourth District held that evidence that C.M. ran after seeing police was probative of his guilty mind and therefore, "[o]n rebuttal, the state was entitled to nullify C.M.'s explanation for his flight by showing that 15 minutes earlier he had encountered the same officer without incident." Id. at 1307.
In Butler v. State, 842 So.2d 817, 826-27 (Fla.2003), Butler testified that he and the victim had consensual sex shortly before she was murdered. He further gave the impression they had a good relationship, and he would never hurt her. In response to Butler's allegation that he would never hurt the victim, the State was allowed in cross-examination to inquire about an incident four years earlier where Butler had choked the victim. The Butler court held that this cross-examination was permissible to explain or modify Butler's testimony *308 during direct examination. Id. at 827. The court noted that when a defendant testifies in court, "his credibility may be impeached in the same manner as any other witness" and that such impeachment may involve prior acts of misconduct. Id.; see Ashcraft v. State, 465 So.2d 1374, 1375 (Fla. 2d DCA 1985) (holding that Ashcroft "opened the door" to questions about a prior conviction for rape, after he gave misleading testimony that he had never hurt anyone).
In a case with similar facts to the present one, the appellant claimed that he refused to take a breath test because he was unfamiliar with the terms of the implied consent warning and he had never before heard them. Long v. State, 185 Ga.App. 277, 363 S.E.2d 807, 808 (Ga.Ct.App.1987). The court held that it was proper to impeach the appellant with evidence that he had been previously arrested twice for DUI and had been given both a urine test and a breath test. Id.
A suspect's refusal to submit to a breath alcohol test is admissible in evidence at a trial for driving under the influence because it is relevant to show the suspect's consciousness of guilt. See South Dakota v. Neville, 459 U.S. 553, 565, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (holding that it was permissible for state to use appellee's refusal to take blood-alcohol test as evidence of guilt in trial for driving under the influence); State v. Taylor, 648 So.2d 701, 704 (Fla.1995) (holding that appellee's refusal to take field sobriety tests was "relevant to show consciousness of guilt"); Kurecka v. State, ___ So.3d ___, ___, 2010 WL 3766727 (Fla. 4th DCA 2010) (noting that where State introduces evidence of defendant's refusal to take breath test as consciousness of guilt, the defendant can introduce evidence of circumstances surrounding refusal). Here, Hayward testified that the reason he did not want to take a breath alcohol test was because he had "heard from people, and I've seen breath tests go wrong." I disagree with the majority that this testimony was not misleading or incomplete. It misled the jury because the testimony inferred that the only reason Hayward did not want to take the test was because he had heard the test was not reliable. Therefore, the State was correctly allowed to "qualify, explain, or limit" the testimony by showing that the reason Hayward did not want to take the breath alcohol test was because he had taken the test before and, as a result of the test, he was convicted of DUI. See Austin, 48 So.3d at 1025.
I believe that Hayward "opened the door" by choosing to testify to a self-serving misleading version of why he refused the breath test. Questions about his prior DUI arrest where he had taken a breathalyzer and had been convicted were perfectly appropriate in a search for the truth.