# Third District Court of Appeal

## State of Florida

Opinion filed February 4, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0483
Lower Tribunal No. ACIQQNE

_____

**Oscar David Osorio,**
Appellant,

vs.

**State of Florida,**
Appellee.

An Appeal from the County Court for Miami-Dade County, Kristy Nuñez, Judge.

Carlos J. Martinez, Public Defender, and Amy Lynn Weber, Assistant Public Defender, for appellant.

James Uthmeier, Attorney General, and David Llanes, Assistant Attorney General, for appellee.

Before FERNANDEZ, MILLER, and GOODEN, JJ.

MILLER, J.

A jury convicted appellant, Oscar David Osorio, of a single count of driving under the influence ("DUI") causing property damage, in violation of section 316.193, Florida Statutes (2024). The dispositive issue on appeal is whether the prosecutor harmfully shifted the burden of proof by arguing in closing that Osorio could have proven his innocence by submitting to a breath-alcohol test.

I

The facts require little elaboration. While operating a pickup truck, Osorio struck a patrol car parked on the side of the roadway. He encountered Officer Zachary Bakewell on the scene and apologized.

Osorio blamed the collision on the fact that he was driving while consuming a take-out meal. Noting signs of impairment, Officer Bakewell requested that Osorio participate in a series of field sobriety exercises. Osorio complied but performed poorly. Officer Bakewell administered implied consent warnings and requested a breath-alcohol test. But Osorio refused.

Osorio was arrested and charged with one count of DUI causing property damage. He then asserted that sports-related injuries had hindered his roadside performance.

2

The case proceeded before a jury. During initial closing argument, the prosecutor argued:

> If you believe that he's sober-if someone was sober in this situation, why would you not blow? (Claps hands). You'd be done with it, proved innocence beyond a reasonable doubt, we're out of here. There's one reason you don't blow. It's because it's better not to blow and gamble than it is to blow and remove all doubt. Even if it means your license is going to be suspended.

The court overruled a timely defense objection.

Defense counsel argued in her closing that Officer Bakewell failed to conduct an adequate investigation, and Osorio's preexisting injuries precipitated his poor roadside performance. The prosecutor reiterated in rebuttal closing that Osorio was provided an opportunity to "prove" he was not impaired:

> But the part that I really want to emphasize is, [the officer] did investigate the injuries. He gave the defendant a chance to prove that due to poor performance—that his poor performance was due to anything other than alcohol. All he had to do was blow.

The defense again unsuccessfully objected. Osorio was convicted as charged and sentenced, accordingly. This appeal ensued.

**II**

**A**

We review a trial court's ruling on the propriety of closing arguments for an abuse of discretion. See Paul v. State, 407 So. 3d 468, 480 (Fla. 4th

3

DCA 2025). Improper burden-shifting remarks are subject to a harmless error analysis. See Howitt v. State, 266 So. 3d 219, 223 (Fla. 5th DCA 2019). The State bears the burden of proving "beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986).

**B**

"The purpose of closing argument is to help the jury understand the issues presented in a case by applying the evidence to the applicable law." Goodrich v. State, 854 So. 2d 663, 664 (Fla. 3d DCA 2003). In the criminal arena, both the State and defense counsel are afforded wide latitude in delivering closings. Jean v. State, 27 So. 3d 784, 786 (Fla. 3d DCA 2010). But such latitude is not unfettered.

"[D]ue process requires the [S]tate to prove every element of a crime beyond a reasonable doubt." Jackson v. State, 575 So. 2d 181, 188 (Fla. 1991). It follows that "it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt." Gore v. State, 719 So. 2d 1197, 1200 (Fla. 1998). The State is thus

4

ordinarily precluded from arguing that the defendant has assumed a duty to refute any element of the crime. See Jackson, 575 So. 2d at 188.

Codified in section 316.1932, Florida Statutes (2023), Florida's implied consent law provides, in pertinent part:

> A person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by operating such vehicle, deemed to have given his or her consent to submit to an approved chemical test or physical test including, but not limited to, an infrared light test of his or her breath for the purpose of determining the alcoholic content of his or her blood or breath if the person is lawfully arrested for any offense allegedly committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages.

§ 316.1932(1)(a)1.a., Fla. Stat. The statute further provides that "[t]he refusal to submit to a chemical or physical breath test upon the request of a law enforcement officer . . . is admissible into evidence in any criminal proceeding." Id.

Consistent with the statute, it has long been settled that impairment and consciousness of guilt may be inferred from the defendant's refusal to submit to a breath-alcohol test. The prosecutor may therefore properly argue that the refusal is positive evidence, supporting the conclusion that the test would have revealed the presence of alcohol. See Grzelka v. State, 881 So. 2d 633, 634 (Fla. 5th DCA 2004). Likewise, the more specific assertion that the defendant refused to submit to testing because he knew his breath-

5

alcohol concentration would be over the legal limit is authorized. See O'Brien v. State, 367 So. 3d 528, 535 (Fla. 4th DCA 2023).

But arguments blurring the distinction between the defendant's consciousness of guilt and the State's burden of proof go too far. See People v. Johnson, 819 N.E.2d 1233, 1238 (Ill. App. Ct. 2004). Our sister courts have found that suggesting the defendant forfeited the opportunity to prove his innocence by refusing to submit to testing is improper burden shifting. See Sheely v. State, 392 So. 3d 576, 578 (Fla. 4th DCA 2024) (burden shifting to argue that "defendant declined the opportunity to dispel the officers' suspicions that he was impaired"); Morris v. State, 988 So. 2d 120, 122–23 (Fla. 5th DCA 2008) (prosecutor improperly shifted the burden of proof by arguing that an innocent person would "volunteer to take the [breath or blood alcohol tests or roadside exercises] to 'prove' his or her innocence"); Concha v. State, 972 So. 2d 996, 998–99 (Fla. 4th DCA 2008) (finding prosecutor commented on the defendant's right to remain silent by arguing defendant failed to demand a test to prove his sobriety).

Other jurisdictions with substantially similar implied-consent statutes have reached similar holdings. See People v. Handwerker, 816 N.Y.S.2d 824, 826 (N.Y. App. Term 2006) (prosecutor shifted the burden in arguing "if he's innocent, then why doesn't he want to take the test to prove that?");

6

State v. Wellknown, 510 P.3d 84, 93–94 (Mont. 2022) (concluding that the prosecutor's remarks that the defendant "was given every opportunity to perform field sobriety maneuvers to communicate with [law enforcement] to show that he is not [under the influence of alcohol]," and that he "chose not to do those. He chose not to show the officers that he was not under the influence" were improper burden shifting) (emphasis omitted); State v. Favel, P.3d 1126, 1131–32 (Mont. 2015) (concluding that prosecutor's remark that defendant could have "proven her innocence" by submitting to a breath test was improper because it conveyed "that if [the defendant] were innocent she would have proven her innocence by submitting to a breath test"); State v. Mitchell, 756 S.E.2d 609, 611 (Ga. Ct. App. 2014) (argument "that Mitchell could have proven his innocence by taking a breath test, but chose not to do so" was improper burden shifting); Pinch v. State, 593 S.E.2d 1, 6 (Ga. Ct. App. 2003) (deeming improper prosecutor's comments that "if Pinch had taken the breath test, 'there was a chance to show sobriety'").

**C**

Against these principles, we turn to this case. The State properly argued that if Osorio was not impaired, he would have agreed to submit to a breathalyzer. But by invoking the quantum of proof and further suggesting that Osorio waived the opportunity to prove his innocence, the remarks

7

strayed beyond consciousness of guilt and into impermissible territory. We are aware that even constitutional error does not necessarily rise to a harmful level.[1] See Figueroa-Sanabria v. State, 366 So. 3d 1035, 1050 (Fla. 2023). But here, as in Sheely, "the signs of impairment observed by the officer could have been attributed to benign reasons." Sheely, 392 So. 3d at 578. Given the nature of the remaining evidence, we are not persuaded there is no reasonable possibility that the error contributed to the conviction. See id.; see also DiGuilio, 491 So. 2d at 1135–36. Accordingly, we reverse and remand for a new trial.

Reversed and remanded.

FERNANDEZ, J., concurs.

---

[1] We summarily dispense with the State's argument that the comments were fair reply or invited error because the initial burden-shifting argument occurred in the first summation, not rebuttal.

8

GOODEN, J., dissenting.

In prosecutions for driving under the influence where a defendant refused to submit to a breathalyzer test, prosecutors must be careful not to cross the line from appropriately addressing the refusal as consciousness of guilt to improperly shifting the burden to the defendant to prove his or her innocence. This case requires us to analyze that line and determine whether the State stayed within the appropriate confines during closing argument. Unlike my colleagues, I find that the State did so and therefore, would affirm.

**I.**

Shortly after midnight on August 14, 2023, police officers were conducting a traffic stop in the far-right lane of Biscayne Boulevard. Two patrol cars were behind the vehicle with their emergency lights activated. Suddenly, a white pickup truck—driving erratically and at a high speed—struck the driver's side mirror of one of the patrol cars. Just past both patrol cars, the pickup truck stopped. An officer came to the passenger door and directed the driver, Oscar David Osorio, to move the truck to a side street for safety. Osorio complied.

But when the officer came to the driver's side door, he noticed Osorio's eyes were bloodshot and watery, and his face was pale and red-spotted.

9

Osorio told the officer he was eating Taco Bell when he struck the patrol car and he was "sorry about that, man." The officer noticed that Osorio was slow to respond and gave a "very blank stare."

The officer asked Osorio to step out of the truck. Stumbling out, Osorio had trouble maintaining his balance and smelled of alcohol. The officer requested that Osorio perform field sobriety exercises. On the walk-and-turn exercise, he did not maintain his balance, did not walk in a straight line, failed to count his steps aloud as instructed, and failed to turn as requested. Osorio then did not perform the one leg stand exercise as directed. For those reasons, the officer arrested Osorio for driving under the influence.

Osorio waived his Miranda rights and made several statements. He stated he was at a friend's home before the accident, but denied drinking. Osorio also explained he has no physical disabilities or injuries that would have affected his results on the field sobriety exercises. Later, however, he claimed he had prior sports injuries, but did not elaborate what those were.

The officer transported Osorio to the police station for a breathalyzer test. The officer explained Florida's implied consent law and its consequences. Yet Osorio refused to provide a breath sample. He signed the implied consent form acknowledging that refusing to do so results in

suspension of his driver's license and the possibility of additional criminal charges.

The State charged Osorio with driving under the influence causing or contributing to causing property damage. The case proceeded to trial. During opening statements, the State explained that Osorio refused to provide a sample of his breath because he knew what the results would show. It also reiterated that it has the burden to prove guilt beyond a reasonable doubt. Osorio's theory of the case was that he was distracted—not intoxicated. He pointed to the lack of evidence of intoxication, and highlighted no testing was done. Osorio argued throughout that the State did not meet its burden to prove guilt beyond a reasonable doubt.

The State called one witness—the officer. As exhibits, the State entered the officer's body-worn camera footage of the encounter, footage from the dash camera, footage of the post-Miranda statements, and the signed implied consent form. Osorio did not testify and presented no witnesses.

Pertinent to our review is closing argument. The State began by reminding the jury of its burden. It addressed the elements it must prove and argued it did so "fairly clearly." It then played the video again of Osorio performing the field sobriety exercises. Then, the prosecutor stated:

11

Now, let's say wrecking into a big sign that says don't hit me doesn't convince you, this video doesn't convince you, there's one more thing that should convince you. It's the defendant's actions. He was informed – If you would please – He was informed that if he didn't blow his license would be suspended, that it'd be used against him right here, that – Let me – Let me take a step back.

If you believe that he's sober – If someone was sober in this situation, why would you not blow? (Claps hands). You'd be done with it, proved innocence beyond a reasonable doubt, we're out of here. There's one reason you don't blow. It's because it's better not to blow and gamble than it is to blow and remove all doubt. Even if it means your license . . . is going to be suspended.

Osorio objected on the grounds of improper burden-shifting. The trial court overruled the objection, but instructed the jury to rely on the evidence presented and not on what the lawyers say during closing argument.

In his closing argument, Osorio argued that the State has the "burden to prove beyond and to the exclusion of every reasonable doubt" that he was under the influence. He pointed to the lack of evidence showing intoxication, the evidence presented, and the conflicts in that evidence. Osorio highlighted that he told the officer he had prior sports injuries and the officer never investigated those injuries. He then reminded the jury again that the "burden of proof ends at this table with the government. Hold the government to its burden. They have not proved every single element

12

beyond and to the exclusion of every reasonable doubt in this case, save they offered you the testimony of one officer."

In rebuttal, the State continued:

Now, there was also a lot of talk about the investigation the officer did and that he didn't look into the injuries more. I mean, I guess, where I want to start is, he's not a doctor. Was he supposed to go check his ankles for the sports injuries? Never mind the fact that he said he didn't have any injuries after – excuse me – that he didn't have any illnesses before.

. . .

But the part that I really want to emphasize is, he did investigate the injuries. He gave the defendant a chance to prove that due to poor performance . . . that his poor performance was due to anything other than alcohol. All he had to do was blow.

. . .

All he had to do was blow. He chose not to.

Osorio objected three times to improper burden-shifting, and three times the trial court overruled the objection. Thereafter, the trial court instructed the jury that the State has the burden to prove the elements of the crime beyond a reasonable doubt and a defendant need not disprove any element or to prove his or her innocence.

Ultimately, the jury found Osorio guilty of driving under the influence causing or contributing to causing property damage. The trial court adjudicated Osorio guilty, imposed a $2,000 fine, sentenced him to thirty

13

days house arrest followed by one year of reporting probation, and suspended his license for one year due to his refusal to submit to the breathalyzer test.

This appeal followed. Osorio challenges the trial court's decision to overrule his burden-shifting objections during closing argument.

## II.

Our review is for an abuse of discretion. See Ford v. State, 802 So. 2d 1121, 1132 (Fla. 2001) ("It is within the court's discretion to control the comments made to a jury, and a court's ruling will be sustained on review absent an abuse of discretion."). In doing so, we must consider harmless error. See Rodriguez v. State, 753 So. 2d 29, 39 (Fla. 2000) ("However, it is well settled that such erroneous comments do not require an automatic reversal."); State v. DiGuilio, 491 So. 2d 1129, 1139 (Fla. 1986) ("The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state.").

## III.

### A.

Closing argument is an attorney's final chance to persuade the jury. It is his or her chance to summarize the evidence. The attorney should "help

the jury understand the issues by applying the evidence to the law applicable to the case." Hill v. State, 515 So. 2d 176, 178 (Fla. 1987). Attorneys "may comment on the uncontradicted or uncontroverted nature of the evidence," and point to certain evidence being more believable than others. White v. State, 377 So. 2d 1149, 1150 (Fla. 1979); Covington v. State, 842 So. 2d 170, 172 (Fla. 3d DCA 2003). This powerful moment helps connect the dots for the jury.

Yet an attorney's "comments must be based on facts in evidence or fair inference from those facts." McKenzie v. State, 830 So. 2d 234, 238 (Fla. 4th DCA 2002). See also R. Regulating Fla. Bar 4-3.4(e) ("A lawyer must not . . . in trial, . . . allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence . . . ."); Huff v. State, 437 So. 2d 1087, 1090 (Fla. 1983) ("Second, the state attorney is prohibited from commenting on matters unsupported by the evidence produced at trial."). "Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments." Thomas v. State, 748 So. 2d 970, 984 (Fla. 1999). See also Griffin v. State, 866 So. 2d 1, 16 (Fla. 2003) ("Merely arguing a conclusion that can be drawn from the evidence is permissible fair comment."). To this end, "a considerable degree of latitude is allowed prosecutors in closing argument to the jury . . . ."

15

Frierson v. State, 339 So. 2d 312, 312 (Fla. 3d DCA 1976). But "this latitude does not extend to permit improper argument." Gore v. State, 719 So. 2d 1197, 1200 (Fla. 1998).

Placed in the context of a criminal trial, the standard is "not which side is more believable . . . ." Id. Rather—because the defendant is cloaked with the presumption of innocence and has a right to due process of law—the State has the burden to prove each element of the crime beyond a reasonable doubt. "For that reason, it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt." Id. Improper comments include those that suggest the defendant has an obligation to produce evidence, prove his or her innocence, or refute elements of the charged offense. Rivera v. State, 840 So. 2d 284, 288 (Fla. 5th DCA 2003). See also Jackson v. State, 575 So. 2d 181, 188 (Fla. 1991) ("Accordingly, the state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence.").

Even so, improper comments may still be permissible in certain narrow circumstances—if they are a fair reply or an invited response to a defendant's

16

closing argument.  See Walls v. State, 926 So. 2d 1156, 1166 (Fla. 2006);

Joyner v. State, 979 So. 2d 1246, 1249–50 (Fla. 4th DCA 2008).  See also

State v. Ling, 212 So. 3d 530, 533 (Fla. 1st DCA 2017) ("Where defense

counsel places an issue before the jury in closing argument, the prosecution

is permitted to respond, and 'the defense may not be granted a new trial

because the state "rose to the bait."'") (citing Brown v. State, 367 So. 2d 616,

625 (Fla. 1979)).  Prosecutors have latitude to fairly respond to the defense's

characterization of the evidence.  Paul v. State, 407 So. 3d 468, 481 (Fla.

4th DCA 2025).  In the end, "[a] prosecutor's argument should be examined

in the context in which it is made."  Stancle v. State, 854 So. 2d 228, 229

(Fla. 4th DCA 2003).  This context is critical.

**B.**

Florida's implied consent law allows the jury to hear that the defendant

refused to submit to a breathalyzer test.  It provides:

> A person who accepts the privilege extended by the laws of this
> state of operating a motor vehicle within this state is, by operating
> such vehicle, deemed to have given his or her consent to submit
> to an approved chemical test or physical test including, but not
> limited to, an infrared light test of his or her breath for the purpose
> of determining the alcoholic content of his or her blood or breath
> if the person is lawfully arrested for any offense allegedly
> committed while the person was driving or was in actual physical
> control of a motor vehicle while under the influence of alcoholic
> beverages. . . . The refusal to submit to a chemical or physical
> breath test upon the request of a law enforcement officer as

17

provided in this section is **admissible into evidence in any criminal proceeding.**

§ 316.1932(1)(a)1.a, Fla. Stat. (2023) (emphasis added).

When the defendant is advised of the consequences, evidence of the refusal is probative of consciousness of guilt. State v. Taylor, 648 So. 2d 701, 704 (Fla. 1995); Grzelka v. State, 881 So. 2d 633, 634 (Fla. 5th DCA 2004). See also Black's Law Dictionary (12th ed. 2024) (defining consciousness of guilt as "[t]he awareness of an accused that he or she has engaged in blameworthy conduct, usu. as demonstrated by evidence that the accused has tried to avoid the consequences of a crime . . . ."); Penalver v. State, 926 So. 2d 1118, 1132 (Fla. 2006) ("Additionally, this Court has allowed the admission of evidence as relevant to consciousness of guilt where a suspect in any manner attempts to evade prosecution after a crime has been committed."); Straight v. State, 397 So. 2d 903, 908 (Fla. 1981) ("When a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, concealment, resistance to lawful arrest, or other indications after the fact of a desire to evade prosecution, such fact is admissible, being relevant to the consciousness of guilt which may be inferred from such circumstance."). "[I]f a defendant knows that his refusal carries with it adverse consequences, the hypothesis that the refusal was an

18

innocent act is far less plausible." <u>Menna v. State</u>, 846 So. 2d 502, 505 (Fla. 2003).

In sum, evidence that the defendant refused to submit to a breathalyzer test is admissible. Since it is admissible evidence, a prosecutor can address it and the logical inferences that flow therefrom during closing arguments— if he or she avoids improper argument.

**C.**

Osorio asserts that the State's closing argument crossed the line and improperly shifted the burden to him. Viewing the closing arguments in their entirety and putting the statements in context, I disagree. While these comments are close to the line, I find that the prosecutor did not cross it.

After reminding the jury of its burden of proof, addressing the crime's elements, and showing the video of the field sobriety exercises, the State turned to Osorio's refusal. It did so within the context of Osorio's reason not to submit—consciousness of guilt. It stressed why someone would not blow and focused on the gamble involved—that a jury may find that there is not enough evidence of intoxication to convict. This went directly to Osorio's conduct to try to avoid the consequences of his crime. <u>Penalver</u>, 926 So. 2d at 1132; <u>Straight</u>, 397 So. 2d at 908.

Even though the word "prove" was used, the inartful comments did not shift the burden of proof. Because the State focused on the reason for the refusal—not on whether Osorio demanded testing to prove his innocence or that Osorio had to prove anything in court—the argument was proper. Contrast O'Brien v. State, 367 So. 3d 528, 535 (Fla. 4th DCA 2023) (finding statement that defendant did not want the officers or the jury to know how much he had to drink was proper and did not shift the burden of proof), with Morris v. State, 988 So. 2d 120, 123 (Fla. 5th DCA 2008) (finding argument that an innocent man would take the breath test and prove the officer wrong was improper as it told the jury they should infer guilt because Morris did not take affirmative steps to prove his innocence), Concha v. State, 972 So. 2d 996, 998 (Fla. 4th DCA 2008) (holding "I'm not drunk he says. Okay. Prove it." was improper and shifted the burden), and Sheely v. State, 392 So. 3d 576, 578 (Fla. 4th DCA 2024) (finding improper the State's comment that the defendant "declined" to "dispel the officers' suspicions" by refusing to submit). It was fair commentary based on the evidence presented at trial. Osorio was not forced to prove anything.

As for the rebuttal, I also find that the State's comments were proper. It fell within the bounds of fair reply. The prosecutor's comment that the officer "gave the defendant a chance to prove that . . . his poor performance

20

was due to anything other than alcohol," was directly in response to Osorio's claim that the officer did not thoroughly investigate his prior sports injuries to determine whether he could perform the field sobriety exercises. See Walls, 926 So. 2d at 1166; Joyner, 979 So. 2d at 1249. This was an attempt to show the folly of Osorio's argument.

**D.**

Even if I found the comments improper, I would find any error harmless beyond a reasonable doubt. DiGuilio, 491 So. 2d at 1139. There is no reasonable possibility that the purported error contributed to the verdict.

The State and Osorio both explained to the jury *repeatedly* during voir dire, opening statements, and closing arguments that the State has the burden of proof. This was further conveyed by the trial court in its jury instructions throughout trial. See Carter v. Brown & Williamson Tobacco Corp., 778 So. 2d 932, 942 (Fla. 2000) ("Absent a finding to the contrary, juries are presumed to follow the instructions given them."). With the sheer number of times the jury heard it, there can be no confusion about the burden of proof. See Bush v. State, 809 So. 2d 107, 117 (Fla. 4th DCA 2002) ("With the repetition of this instruction, it cannot be suggested that the state's argument did anything to make the jury believe that the burden was otherwise. Thus, the remarks were not harmful.").

Further, these were brief comments during closing and were not the theme or the focus. See Lammons v. State, 246 So. 3d 524, 526 (Fla. 3d DCA 2018); Wellons v. State, 87 So. 3d 1223, 1225 (Fla. 3d DCA 2012). And, immediately after the initial comment, the trial court gave a curative instruction and directed the jury to rely on the evidence and that closing argument is not evidence. See Almeida v. State, 748 So. 2d 922, 927 (Fla. 1999) (finding closing argument error harmless, in part, because the trial court instructed the jury that what the lawyers say is neither evidence nor law); Raysor v. State, 276 So. 3d 121, 124 (Fla. 2d DCA 2019) ("The giving of this instruction can factor into a determination of whether an improper argument is harmless or requires reversal."). In effect, the jury was told to ignore the argument, thus dispelling the prejudicial effect.

What is more, given the uncontroverted and unimpeached evidence, there is no reasonable possibility that, but for these comments, the outcome at trial would have been any different. See Bradley v. State, 214 So. 3d 648, 656 (Fla. 2017). This evidence included detailed testimony from the arresting officer, the implied consent form refusing the breathalyzer test, and several videos showing his erratic driving, behavior, performance in field sobriety exercises, and speech. DiGuilio, 491 So. 2d at 1135. This evidence showed that at a high speed, Osorio struck a patrol car that had its lights

22

activated at night. He had bloodshot eyes and a blank look on his face. The officer smelled alcohol emanating from Osorio. When he exited the vehicle, Osorio could not maintain his balance and stumbled. He then failed two field sobriety exercises. Osorio admitted to hanging out with friends right before the accident. This was all caught on camera and shown to the jury. There is no doubt that Osorio was intoxicated.

## IV.

When viewed in context and within the entirety of the closing arguments, the challenged comments did not shift the burden of proof to Osorio. The State never asserted Osorio had to prove his innocence, bring forth evidence, or refute elements of the crime. The jury was not misled as to the burden—instead, it was repeatedly told that the State had the burden to prove each element beyond a reasonable doubt. Simply put, the trial court did not abuse its discretion.

For these reasons, I respectfully dissent.